John Loughran v. Commissioner.
Loughran v. Commissioner
Docket Nos. 79218, 80377.
United States Tax Court
T.C. Memo 1960-214; 1960 Tax Ct. Memo LEXIS 75; 19 T.C.M. (CCH) 1193; T.C.M. (RIA) 60214; October 10, 1960
Robert R. Faulkner, Esq., 940 Shoreham Bldg., Washington, D.C. and Richard E. Shands, Esq., for the petitioner. Neil J. O'Brien, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's Federal income taxes for the years 1953, 1954, *76 1956, and 1957 in the respective amounts of $3,435.42, $4,225.09, $17,868.23, and $2,195.89. That part of the deficiencies here in issue arises by reason of respondent's determination that certain amounts paid by petitioner to The Philadelphia National Bank were "not deductible as interest paid within the meaning of" section 23(b) of the Internal Revenue Code of 1939 and section 163 of the Internal Revenue Code of 1954. Findings of Fact Most of the facts have been stipulated by the parties. We find them to be as stipulated and incorporate herein by this reference the stipulation together with the exhibits attached thereto. Petitioner was born and reared in the District of Columbia and has been engaged in business in Washington and vicinity all of his adult life. During the period here involved he kept his books and made his income tax returns on a calendar year and cash receipts and disbursements basis. Prior to and during the years 1953 through 1957, and up to the date of the hearing on June 15, 1960, petitioner was an active stockholder and officer of a cigarette sales corporation, a cigar sales corporation, and two apartment house corporations from *77 which he received salaries totaling about $40,000 a year; was engaged in buying and selling real estate with his own and borrowed funds, and owned several pieces of improved real estate, subject to mortgages, and also unimproved real property. During this period petitioner paid interest on mortgage debts and personal bank loans as follows: Interest
1953
1954
1955
1956
1957
Mortgage
$72,631.46
$ 95,263.69
$ 87,898.39
$ 87,096.72
$ 79,722.30
Personal
26,641.36
39,984.20
43,877.92
44,455.93
22,680.76
$99,272.82
$135,247.89
$131,776.31
$131,552.65
$102,403.06 Included in the personal loan interest payments were payments made by petitioner as "interest" to The Philadelphia National Bank of Philadelphia, Pennsylvania (hereinafter called Philadelphia National), as follows: $4,520.84 in 1953; $15,206.60 in 1954; $15,384.07 in 1955; $19,048.50 in 1956; and $11,162.66 in 1957. During each of these years petitioner reported an adjusted gross income and a net taxable income or loss which, upon audit by respondent, were adjusted as follows: Adjusted
Net
Gross Income
Income or
Audit
Net Income
Year
Reported
Loss Reported
Additions
Determined
1953
$86,692.92
$36,720.70
$22,313.23
$59,033.93
1954
54,296.68
( 964.48)
16,706.63
15,742.15
1955
11,243.36
(38,521.40)
1956
64,320.58
11,662.62
30,419.18
42,081.80
1957
31,719.36
( 5,664.48)
15,517.44
9,852.96
*78 Prior to September 30, 1953, an agent of Creth & Sullivan, Inc., an insurance brokerage firm of Philadelphia, Pennsylvania, called upon petitioner and solicited the purchase of a single premium annuity contract. Petitioner was born in 1881. He was and had been in good health all his life. His family has an enviable longevity record. The agent represented to petitioner that if petitioner borrowed money from a bank he could purchase a single premium annuity contract for cash and any interest paid on the bank indebtedness would be deductible in computing his taxable income. To corroborate this representation the insurance agent exhibited a copy of a letter, dated February 19, 1951, signed by a deputy commissioner. Respondent admits the letter was written in response to a written request for a ruling. The portions pertinent to these cases read as follows: Reference is made to your letter dated December 22, 1950, in which you enclose copies of a proposed single premium deferred annuity contract for $100,000 to be issued by the Dominion Life Assurance Company of Waterloo, Ontario, Canada, and of a contract with the Wilmington Trust Company, Wilmington, Delaware, covering a proposed loan, *79 which you state you are considering. You request the opinion of the Bureau with respect to the following questions: 1. Will interest on the loan be an expense deductible from my income in arriving at net taxable income under Section 23(b)? * * *
The facts as stated in your letter and in the sample policy are briefly summarized to the effect that subsequent to December 21, 1965 you would receive monthly installments for life or in the event of your death, the balance of the principal sum would be paid in installments to your designated beneficiary. These facts further show that in order to finance the purchase of the deferred annuity contract you propose to pledge such contract as collateral with the Wilmington Trust Company for a loan equal to its fifth year cash value upon which you will prepay five years interest at 2 1/2 percent, and that subsequent to such five-year period, when the cash value exceeds the collateral required, you may possibly increase the loan to equal the cash value or may possibly cancel or sell the contract. Based upon the above facts the replies to your questions will be set forth in the numerical order in which they are stated in your letter: *80 1. In cases where the loan is obtained from a bank and the taxpayer is on the cash receipts and disbursements basis, it is the opinion of this office that interest on a loan to purchase a single premium deferred annuity contract would be deductible under the provisions of section 23(b) of the Internal Revenue Code. Petitioner's income was in the high income tax brackets in 1953. The tax-saving feature of the plan as represented to him and confirmed by the ruling of respondent was a contributing factor in reaching his decision to purchase a single premium annuity contract. If his income continued to be in a high income tax bracket and the interest to be paid to a bank in connection with the financing of the purchase of the annuity continued to be fairly low and deductible from his gross taxable income, he could acquire a safe asset on advantageous terms. On September 30, 1953, with the aid of Creth & Sullivan, Inc., and after petitioner had furnished a financial statement, Philadelphia National, in which he had no prior account, loaned petitioner $500,000 on his 3 1/2 per cent demand note signed by him in Washington. Upon written instructions from petitioner *81 to Philadelphia National and Manufactures Life Insurance Company of Toronto, Canada (hereinafter called Manufacturers), Philadelphia National paid Manufacturers $340,000 cash and Manufacturers issued to petitioner and delivered to Philadelphia National, as part security for the loan, a single premium annuity contract, No. 1,260,184, providing for a cash surrender value of $477,700 at the end of 15 years (i.e., September 30, 1968), or, at his irrevocable election, a guaranteed pension of $4,313.63 per month for a period of 10 years commencing September 30, 1968. On the same day, upon written instructions from petitioner to Philadelphia National and Dominion Life Assurance Company of Waterloo, Ontario, Canada (hereinafter called Dominion), Philadelphia National paid to Dominion $160,000 cash and Dominion issued to petitioner and delivered to Philadelphia National, as part security on the loan, a single premium annuity contract, No. 346,606, providing for a cash surrender value of $257,440 at the end of 20 years (i.e., September 30, 1973), or, at petitioner's irrevocable election, a guaranteed pension of $2,296 a month for a period of 10 years beginning September 30, 1973. Each contract *82 provided that if petitioner should die before the annuity date the insurance company would pay an amount equal to the single premium payment or the cash value of the annuity contract at his death, whichever was greater. As additional collateral for the loan petitioner pledged a rental lease valued at $90,000 on a Washington office building and Creth & Sullivan, Inc., filed a guaranty with respect to said lease. This additional collateral was required because the cash surrender value of the annuity contracts would not equal the amount of the loan until their fourth year. In January 1954 Creth & Sullivan, Inc., arranged through the National Savings and Trust Company of Washington, District of Columbia (hereinafter called National Savings), one of petitioner's banks of deposit, a loan of $50,000 on petitioner's personal note for like amount. National Savings paid $50,000 direct to Philadelphia National, with instructions to apply this amount in curtailment of petitioner's demand note for $500,000, with the understanding that the National Savings note was to be liquidated by payments from Philadelphia National in the amount of the increment in value of the annuity contracts at the *83 close of each contract year, ending September 30. These payments were made directly or indirectly to National Savings, thus liquidating its note. In connection with these payments petitioner executed and delivered to Philadelphia National 4 separate demand notes aggregating $50,000, thus restoring the indebtedness to Philadelphia National to the original amount of $500,000 as of September 30, 1957. Since the notes were demand notes Philadelphia National could change the interest rate whenever it chose or close the loan. The interest rates charged by the bank during the period of the loans were: Per cent
September 30, 1953
3 1/2
April 1, 1954
3 1/4
October 17, 1955
3 1/2
April 16, 1956
3 3/4
August 23, 1956
4
October 1, 1956
4 1/2
August 2, 1957
4 3/4
The following tabulation shows: (1) Loan balance at the beginning of each year, (2) the amount repaid during the year, (3) the cash value increase borrowed by petitioner each year, (4) the loan balance at the end of each year, (5) the cash value of the annuity contracts at the end of each year, (6) the alleged interest paid, and (7) the tax benefit: 1953
1954
1955
1956
1957
Loan balance at
$500,000.00
$500,000.00
$454,360.00
$470,060.00
$485,920.00
beginning of year
Amount of loan
0
50,000.00
0
0
0
repaid in year
Cash value
0
4,360.00
15,700.00
15,860.00
14,080.00
increase borrowed
in year
Loan balance at
500,000.00
454,360.00
470,060.00
485,920.00
500,000.00
end of year
Cash value of
450,000.00
454,360.00
470,060.00
485,920.00
502,620.00
contracts at end
of year
Interest paid
4,520.84
15,206.60
15,384.07
19,048.50
11,162.66
Tax benefit
3,435.43
4,225.10
0
12,206.79
2,195.89
*84 Petitioner knew that the rate of increase in the cash surrender value of the policies was less than the rate of interest he was paying. However, at the time he entered into these transactions and for some time thereafter, petitioner believed he would be able to deduct the interest payable on the notes from his gross income, and thus the transactions would be profitable. He would not have purchased the annuities if he had thought the interest would not be deductible. Generally this type of investment is not advisable for a person who is in a tax bracket lower than 50 per cent. If petitioner's income dropped substantially or if the interest went too high he would have been advised to abandon the investment. On June 18, 1957, Philadelphia National wrote petitioner stating "money is extremely tight and we have constant demand from our customers for loans * * * we feel obliged to ask you to make arrangements to place this loan with one of your banks of account." Because of other debt commitments and the belief that he could not secure a loan of $50,000 from a local bank, the fact that the interest rate on the note had been increased by Philadelphia National, the fact that in the audit *85 of his returns for some of the years involved the Internal Revenue Service had ruled interest paid Philadelphia National was not allowable as a deduction, and the further fact that his tax bracket had declined from what it had been in 1953 petitioner directed the insurance companies to pay to Philadelphia National the cash surrender value of the annuity contracts which was done and petitioner's indebtedness was liquidated in February 1958 in the following manner: Manufactuers paid Philadelphia National $345,388 and its annuity contract was surrendered. Dominion paid Philadelphia National $163,252.80 and its annuity contract was surrendered. The sum of the payments was $508.640.80. Philadelphia National retained $502,183.17 to liquidate petitioner's indebtedness of $500,000, plus accrued interest of $2,183.17, and remitted to petitioner the balance of $6,457.63. The interest payments made by petitioner to Philadelphia National during the taxable years were in reality interest payments on bona fide indebtedness. Opinion KERN, Judge: If the amounts paid by petitioner as interest on an indebtedness incurred to purchase annuity contracts had been paid with regard to annuity contracts *86 purchased after March 1, 1954, they would not be deductible by virtue of section 264 (a)(2) of the Internal Revenue Code of 1954. [1] However, the annuity contracts here involved were purchased in 1953 and therefore respondent cannot and does not contend that the amounts paid as interest are not deductible by reason of any statutory prohibition against their deduction. [2] Rather, respondent argues that the payments are not deductible because they are not in reality interest paid on a bona fide indebtedness citing, inter alia, Weller v. Commissioner, 270 F. 2d 294; Knetsch v. United States, 272 F. 2d 200, certiorari granted 361 U.S. 958; and W. Stuart Emmons, 31 T.C. 26. *87 These cases were discussed by us in L. Lee Stanton, 34 T.C. 1, at pages 10 and 11, as follows: Knetsch v. United States, 272 F. 2d 200, certiorari granted - U.S. , (February 23, 1960), decided by the Court of Appeals for the Ninth Circuit, involved a transaction in which the taxpayer purchased 2 1/2 per cent annuity savings bonds from a life insurance company by borrowing the necessary money from the life insurance company at 3 1/2 per cent. The Court affirmed the judgment of the District Court which had held that the amount paid to the insurance company was not interest in fact but the purchase price of a tax deduction. The Court of Appeals said it agreed with the opinion in Weller v. Commissioner, 270 F. 2d 294. The Weller case affirmed 31 T.C. 33 and also affirmed W. Stuart Emmons, 31 T.C. 26. The taxpayers in the Emmons and Weller cases had purchased annuity contracts and borrowed money from banks to prepay at a discount all future premiums and then received the loan value which the contract would have accumulated up to the time the prepaid premiums would be due. They then used a part of this money to pay off *88 the loans at the banks. The interest on the bank loans was not in controversy. The taxpayers were disallowed claimed deductions for "interest" on the amounts they allegedly borrowed from the insurance companies, since no money was in effect loaned to them by the insurance companies. The Court of Appeals for the Fifth Circuit in United States v. Bond, 258 F. 2d 577, in a situation similar to that involved in the Knetsch case, held that the interest on the borrowing from the insurance company was deductible. The payments involved in all of the above four cases were on alleged loans from the insurance companies so that the whole transaction in each case was between the taxpayer and the insurance company. No genuine indebtedness existed on which interest was paid. * * * In the instant case petitioner did in reality borrow money from a bank and did in reality pay interest therefor. Regardless of the reason for which the money was borrowed, the interest actually paid is deductible in the absence of a specific statutory prohibition, under the general statutory provision allowing the deduction of interest. See L. Lee Stanton, supra, and Fabreeka Products Co., 34 *89 T.C. - (May 24, 1960). We decide the issue presented herein in favor of petitioner. Decisions will be entered under Rule 50. Footnotes
1. SEC. 264. CERTAIN AMOUNTS PAID IN CONNECTION WITH INSURANCE CONTRACTS. (a) General Rule. - No deduction shall be allowed for - (2) Any amount paid or accrued on indebtedness incurred or continued to purchase or carry a single premium life insurance, endowment, or annuity contract. Paragraph (2) shall apply in respect of annuity contracts only as to contracts purchased after March 1, 1954.↩
2. For a succinct and telling recapitulation of legislation on this subject, see United States v. Bond, 258 F. 2d 577, 582-584↩.