Thomas C. BALLAGH and Vera Reed Ballagh

v.

The UNITED STATES.

No. 393–60.

United States Court of Claims.

May 15, 1964.

Frank J. Eustace, Jr., Philadelphia, Pa., for plaintiffs.

David D. Rosenstein, Chicago, Ill., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant; Edward S. Smith, Lyle M. Turner, and Philip R. Miller, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

JONES, Chief Judge.

Plaintiffs, husband and wife who filed joint tax returns for the periods here pertinent, brought this suit to recover $25,792.02 as alleged overpayment of Federal income tax and interest for the calendar years 1953 and 1954. In their returns, plaintiffs claimed deductions in the amounts of $9,769.97 for the year 1953 and $19,584.84 for the year 1954 as interest payments. The Internal Revenue Service disallowed these deductions and determined a deficiency for each year. Plaintiffs paid the deficiencies and brought this action for refund. The sole issue for our determination is whether these payments were "interest paid * * on indebtedness" within the meaning of § 23(b) of the Internal Revenue Code of 1939 and § 163(a) of the Internal Rev-

enue Code of 1954.[1] Thomas C. Ballagh will hereinafter be referred to as plaintiff.

On December 20, 1947, plaintiff and Standard Life Insurance Company of Indiana (hereinafter referred to as Standard Life) entered into an insurance contract which provided for a life annuity of $6,813.18 per month to be paid to plaintiff commencing December 20, 1988, in exchange for 41 annual premiums of $10,000 each. On the day of the contract, plaintiff paid the initial year's premium of $10,000 to put the policy into effect. According to the contract plaintiff had the right to prepay any amount of the premiums which would be due in the future, and the amount so prepaid would bear interest at a minimum rate of $2\frac{1}{2}$ percent per year or at such higher rate as Standard Life declared. In fact, plaintiff was allowed a compound discount of 2.85 percent on prepaid premiums.

At the time of the contract, and with the compound discount rate of 2.85 percent, $236,856 was the amount which was required to prepay all future premiums. On the same day plaintiff entered into the contract, the Corn Exchange National Bank and Trust Company of Philadelphia (hereinafter referred to as the Bank) issued a cashier's check in the amount of $236,856, payable to plaintiff's order, in exchange for plaintiff's demand note for the same amount, secured by the insurance policy referred to above. It was a condition of the loan that plaintiff would immediately endorse the cashier's check over to Standard Life. He did so, and the Bank credited the $236,856 to the account of Standard Life. On December 26, 1947, Standard Life acknowledged receipt of $236,856 as a deposit by plaintiff in full payment of 40 annual premiums on the insurance contract from December 19, 1948 to December 19, 1988. This $236,856 was placed in a "premium de-

1. Plaintiffs being calendar-year taxpayers, the 1954 Code is applicable to their 1954 tax return by virtue of § 7851(a) (1) (A). However, as the Supreme Court has noted in Knetsch v. United States,

364 U.S. 361, 362, footnote 1, 81 S.Ct. 132, 133, 5 L.Ed.2d 128 "[t]he relevant words of the two sections are the same * * *."

posit account" which was increased by the compound interest of 2.85 percent per year, and decreased by the amount of annual premiums as they became due. The total value of the contract, then, was the sum of the amount in the premium deposit account plus the tabular cash value of the policy.

On December 27, 1947, plaintiff and Standard Life executed a "Loan Agreement," under the provisions of which plaintiff was to pay Standard Life $236,-856, with interest at the rate of 4 percent per annum on the portion secured by the amount remaining in the premium deposit account and at the rate of 6 percent per annum on the portion secured by the tabular cash value of the policy. By the terms of the loan agreement, the debt would be payable and enforceable solely out of the security which was the insurance contract plaintiff had with Standard Life. In return, Standard Life was to pay, and did pay on December 27, 1947, $236,856 to the Bank. Thereafter, the Bank cancelled plaintiff's demand note, and plaintiff paid the Bank $184 as one week's interest on the $236,856.

Additional terms of the loan agreement entitled plaintiff to prepay interest at a compound discount of 2 percent per year, but he could not prepay more than 10 percent of the principal amount of the loan in any one year. On December 27, 1947, plaintiff made out five separate checks to Standard Life in the total amount of $45,568.04. Each of these checks contained a statement that by endorsement thereon the check was accepted by Standard Life in prepayment of one year's interest on the loan. Thereafter, in December of each of the years 1952, 1953, and 1954, plaintiff paid the sums of $9,693.04, $9,769.97, and $19,-584.84, respectively, to Standard Life. These were prepayments of interest due under the loan agreement. The "interest payments" plus the initial premium of $10,000, or an aggregate of $94,615.-89, were the only sums paid by plaintiff to Standard Life. The amounts paid in 1953 and 1954 are the subject of this suit.

At the end of the above series of transactions, plaintiff had an insurance contract with Standard Life, and all of the premiums which would have been due thereon had been prepaid by a deposit of $236,856 in a premium deposit account. This $236,856 was borrowed from Standard Life and plaintiff was obligated to repay Standard Life the $236,856, plus interest, but this obligation was enforceable solely out of the cash or loan value of the insurance contract. Standard Life was paying plaintiff interest of 2.85 percent on the $236,856 plaintiff had deposited in the premium deposit account, while plaintiff was paying Standard Life interest of 4 to 6 percent on the $236,-856 he borrowed from Standard Life. The role of the Bank was that of a middleman: There was an agreement between the general agent of Standard Life and the Bank, whereby the Bank agreed to facilitate transactions involving such insurance plans, and it was understood by all parties that the loan would ultimately be carried by Standard Life rather than by the Bank.

On December 20, 1956, at the request of plaintiff, the loan agreement was cancelled and the policy under the insurance contract was converted to paid-up for its net cash value of $66,388.89. This paid-up policy is still in force.

It was found by the trial commissioner, and not disputed by the parties, that had plaintiff not engaged in the transaction involving the loan of $236,856, and had he paid Standard Life all the payments he actually made as prepayments of premiums rather than as interest under the loan agreement, the net cash value of the insurance contract would have been $98,359.86, on December 20, 1956. Thus, Standard Life's "fee" [2] for its arrangement of the loan transaction was $31,970.97, the difference between $98,-359.86 and $66,388.89. Although plaintiff ended up with a policy having less cash value, he also benefited from the loan transaction. Plaintiff realized a tax saving of $39,427 as a result of deducting "loan interest" of $45,568.04 from his

2. Knetsch v. United States, 364 U.S. 361, 366, 81 S.Ct. 132 (1960).

gross income for 1947, plus a further tax saving of $7,558 as a result of deducting the $9,693.04 "loan interest" from his gross income for 1952. Therefore, plaintiff had a net profit, to date, for his participation in the loan transaction of about $15,000, the difference between the total tax savings realized and Standard Life's "fee" for arranging the loan transaction.

The Government does not concede that any of the payments plaintiff made to Standard Life were properly deductible as "interest" payments. However, the statute of limitations now bars additional assessments for the years prior to 1953. We are concerned, therefore, only with the "interest payments" for the years 1953 and 1954.

The facts of the present case are very similar to those of Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132 (1960). In Knetsch, the taxpayer bought deferred annuity savings bonds in 1953 from an insurance company totaling $4,000,000 in face value, and bearing interest at 2½ percent compounded annually. The purchase price was $4,004,000. Knetsch gave the company his check for $4,000, and signed $4,000,000 of nonrecourse annuity loan notes for the balance. The notes bore 3½ percent interest and were secured by the annuity bonds. The interest was payable in advance, and Knetsch paid the first year's $140,000 interest at the time of the purchase. Under the terms of the bonds, their cash or loan value at the end of the first contract year was to be $4,100,000. The contract terms permitted Knetsch to borrow the excess of this value above his indebtedness without waiting until the end of the contract year. Five days after the purchase Knetsch borrowed from the company $99,000 of the $100,000 excess over his $4,000,000 indebtedness, for which he gave his notes bearing 3½ percent interest. This interest was also payable in advance and on the same day he prepaid the first year's interest of $3,465. Thus, at the end of the first contract year, Knetsch had bonds with a cash

value of $4,100,000 and an indebtedness of $4,099,000. In his tax return for 1953, Knetsch deducted the sum of the two interest payments, or $143,465, as "interest" under § 23(b) of the 1939 Code.

The above described process, except for the initial purchase, was repeated in 1954 at the beginning of the second contract year. Again Knetsch sought to deduct the two interest payments, under § 163(a) of the 1954 Code, which was then applicable.

The Commissioner of Internal Revenue disallowed the deductions and determined a deficiency for each year. Knetsch paid the deficiencies and sued in the District Court for refund. The District Court's judgment for the United States was eventually affirmed by the Supreme Court. The Supreme Court examined "what was done" in Knetsch and found that:

> "Plainly, therefore, Knetsch's transaction with the insurance company did not 'appreciably affect his beneficial interest except to reduce his tax * * *.' Gilbert v. Commissioner, 2 Cir., 248 F.2d 399, 411 (dissenting opinion). For it is patent that there was nothing of substance to be realized by Knetsch from this transaction beyond a tax deduction. What he was ostensibly 'lent' back was in reality only the rebate of a substantial part of the so-called 'interest' payments. The $91,570 difference retained by the company was its fee for providing the facade of 'loans' whereby the petitioners sought to reduce their 1953 and 1954 taxes in the total sum of $233,297.-68." [3]

We believe that the Supreme Court's holding in Knetsch is completely dispositive of the present case. Plaintiff's *loan* transaction with Standard Life did "not appreciably affect his beneficial interest except to reduce his tax * *." To paraphrase the District Court's conclusion of law in Knetsch, quoted in the Supreme Court's opinion,[4] we find that "while in form the payments to Standard

---

3. Id., 364 U.S. at 366, 81 S.Ct. at 135.

4. Id., 364 U.S. at 365, 81 S.Ct. at 134.

Life were compensation for the use or forbearance of money, they were not in substance. As a payment of interest, the transaction was a sham."

Plaintiff attempts to distinguish the Knetsch case from the present situation by contending that his transaction with Standard Life was a valid, as distinguished from a sham, transaction. As support for this contention he points to various findings by the trial commissioner to the effect that plaintiff's primary purpose in entering into the transaction with Standard Life was to provide for a retirement income, but that the deductibility of the interest payments was considered in computing the total cost of the plan; and that plaintiff never borrowed against the increasing cash value of his policy, as did Knetsch, which borrowing would have destroyed the purpose of providing retirement income. We think that plaintiff's evidence does not support his contention.

■ In the first place, the taxpayer's motive, in cases such as the present one, is not controlling. The often quoted language of the Supreme Court in Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, is appropriate here:

"The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. * * * But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended."

This point was specifically reaffirmed by that Court in Knetsch, in putting aside a finding by the District Court on Knetsch's motive.[5]

■ In the second place, plaintiff is wide of the mark in supposing that his primary purpose of providing retirement income can make valid what would otherwise be a sham. For the transaction which we find to be a sham is not the initial insurance contract but the prepayment of all of the premiums and the loan agreement. We do not question that plaintiff's motive in buying the policy was a legitimate one. However, the subsequent prepayment of all premiums by borrowing from the insurance company itself was not necessary in so providing retirement income, and we find that such loan transaction did "not appreciably affect his beneficial interest except to reduce his tax." Since the payments made were part of the loan transaction which we have found to be a sham, we may disregard the payments for the purposes of the tax statute. Gilbert v. Commissioner, 2 Cir., 248 F.2d 399, 411 (dissenting opinion); Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266; Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406; Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782.

Finally, we think the fact that plaintiff never borrowed against the increasing cash value of his policy is not pertinent in considering the deductibility of these payments. To hold otherwise would be to ignore the teachings of the Supreme Court in the Knetsch case. The Court there concluded that what Knetsch was ostensibly "lent" back was in reality only the *rebate* of a substantial part of the so-called "interest" payments. We hold that it makes no difference in these cases whether the taxpayer receives the rebate in the form of a loan or whether he receives it in the form of cash value in the policy.

There remain for our consideration the two cases cited by plaintiff as supporting his contention. Loughran v. Commissioner, 19 T.C.M. 1193 (decided October 10, 1960); Stanton v. Commissioner, 34 T.C. 1 (decided April 7, 1960). Both of these cases are distinguishable from Knetsch on the facts. In Loughran, and in Stanton, there were actual bank loans with interest paid to the banks. As the Tax Court has pointed out in Stanton,[6] in the Knetsch line of cases the in-

---

5. Id., 364 U.S. at 365, 81 S.Ct. 132.

6. 34 T.C. at 10.

terest on the bank loans was not in controversy. Since the present dispute does not involve the $184 plaintiff paid to the Bank, Loughran and Stanton are not apposite.

Plaintiffs are not entitled to recover and their petition is dismissed.