JERALD EPSTEIN AND CAREN EPSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Epstein v. Commissioner
Docket No. 28060-91
United States Tax Court
T.C. Memo 1994-34; 1994 Tax Ct. Memo LEXIS 33; 67 T.C.M. (CCH) 2046; January 26, 1994, Filed *33 On their 1988 tax return, Ps, a husband and wife, claimed various Schedule C deductions with respect to a venture carried on by petitioner wife. Ps also claimed Schedule E losses with respect to two rental properties they owned: a condominium and a vacation house. They also claimed Schedule E losses incurred in their dealings with an entity known as Friedmann Financial Company #2 (Friedmann). R disallowed all of Ps' reported Schedule C deductions and Schedule E loss deductions. 1. Held: Ps' Schedule C activity was not engaged in for profit within the meaning of sec. 183, I.R.C.
2. Held, further, on account of personal use of the property, Ps are not entitled to the losses claimed in connection with the rental of their condominium located in Ashland, Massachusetts. See sec. 280A(e), I.R.C.
3. Held, further, on account of personal use of the property, Ps are not entitled to the bulk of the losses claimed in connection with the rental of their vacation home located in Ludlow, Vermont. See sec. 280A(c)(5) and (e), I.R.C.
4. Held, further, the statute of limitations does not bar R from making adjustments regarding deductions claimed by Ps *34 with respect to Friedmann. 5. Held, further, Ps are subject to the sec. 6651(a)(1), I.R.C., addition to tax for failure to timely file their 1988 tax return. 6. Held, further, Ps are subject to the sec. 6653(a)(1), I.R.C., addition to tax for negligence. 7. Held, further, Ps are subject to the sec. 6661, I.R.C., addition to tax for substantial understatement of liability. For petitioners: Gary Friedmann For respondent: Robert M. Finkel. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By notice of deficiency dated October 11, 1991, respondent determined a deficiency and additions to tax against petitioners as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6661
1988
$ 38,564
$ 6,215.50
$ 2,085.15
$ 9,641
Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The pleadings in this case consist of the petition and an answer thereto. The petition assigns no error to respondent's determination save that petitioners' tax return *35 was never audited. The answer admits of that charge but explains that admission by stating that petitioners failed to submit records or keep appointments scheduled with respondent's agents. [1] Nevertheless, a wide variety of issues have been addressed by stipulation, raised at trial, and argued on brief. Those issues that we deem to have been tried by the implied consent of respondent (Rule 41(b)(1)) are: [2] (1) Whether petitioners' Schedule C activity was engaged in for profit within the meaning of section 183, (2) whether petitioners are entitled to losses claimed in connection with the rental of their condominium located in Ashland, Massachusetts, (3) whether petitioners are entitled to losses claimed in connection with the rental of their vacation home located in Ludlow, Vermont, (4) whether the statute of limitations bars respondent from making adjustments regarding deductions claimed by petitioners with respect to Friedmann Financial Company #2, (5) whether petitioners are subject to the section 6651(a)(1) addition to tax for failure to timely file their 1988 tax return, (6) whether petitioners are subject to the section 6653(a)(1) addition to tax for negligence, and (7) whether *36 petitioners are subject to the section 6661 addition to tax for substantial understatement of liability. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife, who, for the year in issue, made a *37 joint return of income, computed on the basis of a calendar year. For that year, they reported gross income of approximately $ 169,000. At the time the petition in the instant case was filed, petitioners resided in Framingham, Massachusetts. Petitioners' Schedule C Activity -- Caren's Sales
During 1988, petitioner Caren Epstein (Caren) carried on an undertaking listed on petitioners' tax return as Caren's Sales. Caren belonged to a wide variety of health, sports, and tennis clubs near her home. There she would meet women whose husbands were in business. She would propose to those women business services that she could perform for their husbands. Those services included planning parties, sending out invitations, printing various materials, making hotel reservations for out-of-town trade show participants, entertaining the wives and girlfriends of the out-of-town participants, furnishing small gifts such as watches and handbags, and providing the material for, and assembly of, trade show displays. In furtherance of her undertaking, Caren spent a great deal of time entertaining. She would treat to lunch or dinner women friends or acquaintances whose husbands might potentially *38 engage her services. Moreover, she would invite such friends to her house, where she would entertain them in a boutique-type room that was part of her den. There she would display samples and make presentations regarding her services. Although Caren had experience in purchasing items at flea markets for subsequent resale, she had never operated a formal business prior to initiating Caren's Sales. She prepared no financial projections before commencing Caren's Sales. She did not maintain separate books and records for the undertaking. She maintained no separate bank account for the undertaking. She devoted approximately 5 to 10 hours a week to the undertaking in 1988. She discontinued Caren's Sales at the end of 1988 because "it was a lot of work" and because she was losing money. On their 1988 tax return, in connection with Caren's Sales, petitioners reported $ 3,900 of gross income and claimed $ 71,761 of deductions, for a net loss of $ 67,861. Among the deductions claimed, petitioners claimed the expense of more than 50 meals. Four of those meals were with Caren's mother, Betty Paul; four were with Caren's cousin, Sue Habelow; and two were with Caren's nephew, Mitchell *39 Burman. Petitioners also deducted the expense ($ 3,900) of a birthday party thrown for Caren's father-in-law at the LaFayette Hotel. More than 75 percent of the guests attending that party were related to petitioners. During 1988, petitioners paid $ 20,824 of mortgage interest and $ 1,281 of real estate taxes with respect to their principal residence. The Ashland Property
In 1985, petitioners purchased residential property (a condominium) in Ashland, Massachusetts (the Ashland property). The purchase price of the Ashland property was $ 123,900. Petitioners' daughter Lauren moved into the Ashland property when petitioners purchased it in 1985. She resided there while she was in college in the area and subsequent thereto. The Ashland property is shown as Lauren's address on the town of Ashland's voter registration records for 1987, 1988, and 1989. Lauren moved to Florida in October 1988. She resided at the Ashland property for at least 2 months in 1988. In 1988, after the completion of improvements, the condominium consisted of three bedrooms, two bathrooms, a kitchen, den, living room, and two-car garage. Mitchell Burman (Mitchell) is a nephew of petitioners. Mitchell *40 was a tenant of petitioners at the Ashland property during 1987 and 1988. His monthly rental obligation was $ 583.33 a month. Petitioners paid the gas, electricity, water, and sewer charges incurred with respect to the Ashland property. They also paid the telephone bill for the phone at that property for the first 3 months of 1988. The rent charged Mitchell for use of the Ashland property during 1988 was less than a fair rental. On their 1988 tax return, petitioners reported $ 5,900 of rental income from the Ashland property. With respect to that property, they claimed deductible expenditures including $ 9,927 for mortgage interest and $ 1,894 for real estate taxes. Petitioners claimed a total loss from rental of the property of $ 23,729 but, on account of the passive activity loss limitations, deducted only $ 14,012 of that total. The Ludlow Property
In 1986, petitioners also purchased a newly built house in Ludlow, Vermont (the Ludlow property). The purchase price of the Ludlow property was $ 183,000. The Ludlow property has four bedrooms, three bathrooms, and is located within 100 feet of a lake. It is also near the Okemo Vue Ski area and Stratton Mountain, which *41 attracted major tennis tournaments during the summer months. Petitioners are skiers and tennis enthusiasts. During January and February 1988, petitioners rented the Ludlow property to Alvin Levy (Levy) for a rent of $ 4,050. Petitioners did not rent the property at any other time during 1988. Since the property was a 2-1/2 hour drive from their principal residence in Framingham, Massachusetts, petitioners typically would stay over for one or two nights whenever they visited the Ludlow property. Petitioners generally frequented the Ludlow property on weekends only, since they did not wish to miss work. During 1988, petitioners undertook no less than 12 trips to the property, during each of which they claim to have cleaned the vacation house or displayed it to prospective renters. In August 1988, Caren accompanied a group of women from her tennis club to the Ludlow property where they stayed for a week. As part of the trip, Caren and the women attended a national tennis tournament held annually at nearby Stratton Mountain. Petitioners kept no records regarding the identity of the potential renters who were entertained at the Ludlow property during 1988. Similarly, petitioners *42 maintained no logs or journals with respect to the total number of trips, recreational and otherwise, they made to the property during the year. Telephone records indicate that phone calls were made from the Ludlow property on 22 different weekends from March 1 through November 23, 1988. Telephone calls were made from the property on over 100 different days during that same period. Petitioners reported $ 4,050 of gross income from the Ludlow property for 1988. With respect to that property, they claimed deductible expenditures including $ 11,813 for mortgage interest and $ 2,053 for real estate taxes. Petitioners claimed a total loss from rental of the property of $ 34,392 but, on account of the passive activity loss limitations, deducted only $ 20,309 of that total. Petitioners used the Ludlow property for personal purposes on no less than 100 days during 1988. It was rented for a fair rental for 60 days in 1988. OPINION I. Caren's Sales
Respondent disallowed petitioners' Schedule C deductions in the amount of $ 71,761 claimed with respect to Caren's Sales for 1988. Respondent's basis for that disallowance was that (1) petitioners had failed to substantiate those *43 deductions and (2) Caren's Sales was not an activity engaged in for profit within the meaning of section 183. [3] For the reasons enumerated below, we concur with respondent with regard to section 183. An activity is engaged in for profit if the taxpayer has an actual and honest objective of making a profit. Keanini v. Commissioner, 94 T.C. 41, 46 (1990). The taxpayer's expectation of profit need not be a reasonable one; it is sufficient *44 if the taxpayer has a bona fide expectation of realizing a profit, regardless of the reasonableness of such expectation. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(a), Income Tax Regs.
The regulations promulgated under section 183 list the following nine relevant factors that should normally be taken into account in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayers' history of income or loss with respect to the activity, (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer, and (9) the extent to which elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. That list, however, is by no means exclusive, and it is *45 not intended that only those factors are to be taken into account in making that determination. Id. Moreover, the regulations provide that no one factor is determinative. Id. Likewise, we do not simply list factors as supporting the position of one side or the other, awarding victory to the side with the longer list. Taube v. Commissioner, 88 T.C. 464, 480 (1987); sec. 1.183-2(b), Income Tax Regs. Rather, whether a taxpayer possesses the relevant profit objective is a question of fact to be determined in light of all the facts and circumstances. E.g., Taube v. Commissioner, supra; sec. 1.183-2(b), Income Tax Regs. The burden of proving such objective is on petitioners for 1988. See Rule 142(a). Caren's Sales, as described by Caren, in her testimony, was an eclectic venture that began with Caren carrying with her items such as handbags and watches that she had purchased at flea markets. Caren displayed those items to potential customers, mainly women from her health and tennis clubs, hoping for sales. In 1988, however, Caren made no such sales. Instead, mainly through those same women, she tried to *46 sell to their husbands business services that she could perform (such as making hotel reservations). Although petitioners reported $ 3,900 of fees from such business in 1988, petitioners have not given us any particulars as to who paid that money or why it was paid. In connection with earning that income in 1988, petitioners claimed expenses of $ 71,761. Caren testified that she discontinued Caren's Sales at the end of 1988 because she was losing money. The following factors are indicative to us that Caren's Sales was an activity not engaged in for profit. Prior to commencing Caren's Sales, Caren had no experience with running a business in general or with providing services to businesses in particular. During 1988, Caren worked only part time (between 5 and 10 hours a week) on Caren's Sales. Caren developed no strategic plan or business projections with respect to Caren's Sales. Caren failed to segregate her personal funds from those generated by the undertaking. Caren maintained no separate books or records with respect to the undertaking. A substantial portion of Caren's "business development" activities consisted of entertaining friends and relatives, which, we have *47 no doubt, were activities giving Caren and her friends and relatives substantial pleasure. Finally, petitioners were in a position to receive substantial tax benefits from their Schedule C losses as a result of their income from other sources (approximately $ 169,000). We think that Caren's Sales, in large part, represented an attempt on the part of petitioners to deduct as business expenses expenditures that, in fact, were personal in nature. Petitioners have not convinced us that Caren's undertaking required her to do anything other than to maintain an active social life. A substantial portion of her time in connection with the undertaking appears to have been spent dining with or entertaining her friends and relatives or attending her various health and tennis clubs. While there is no requirement that profit-oriented work be onerous and unpleasant, the evidence presented by petitioners does not indicate activity motivated by a profit objective. On the contrary, the evidence shows that Caren simply carried on her active social life, kept cursory records in connection therewith, and claimed deductions that offset a substantial portion of her and her husband's combined income. *48 On the record before us, we are unconvinced that Caren's Sales was an activity engaged in for profit within the meaning of section 183, and we so find. We hold that petitioners' deductions in connection with Caren's Sales, claimed on Schedule C, are disallowed pursuant to section 183(a), except to the extent provided for in section 183(b). [4] One item, however, requires special mention. On Schedule C, petitioners claimed a deduction in the amount of $ 18,000 for rent paid to themselves, as rent for the portion of their residence used in connection with Caren's Sales. They took that amount into income on Schedule E and, among other expenses, deducted mortgage interest and property taxes against that receipt. On brief, petitioners ask us to eliminate both the Schedule C deduction of $ 18,000 and the Schedule E inclusion of $ 18,000 and treat all expenses and other amounts deducted on Schedule E with respect to Caren's Sales as having been deducted on Schedule C. We will do so, and deem petitioners to have claimed an overpayment in tax in the amount necessary to do so. See sec. 6512(b). *49 II. Rental Activity
Section 280A governs our analysis with respect to petitioners' rental activities. The portions of that section relevant to our inquiry are set forth in the margin. [5]
*50 a. The Ashland Property
In 1988, petitioners owned a three bedroom residence in Ashland, Massachusetts (the Ashland property). During that year, petitioners received rent with respect to the Ashland property from their nephew, Mitchell. Mitchell's monthly rent obligation was $ 583.33 ($ 7,000 annualized). [6] *51 Petitioners reported a net loss attributable to the Ashland property of $ 23,729, which, after taking account of the passive loss limitations, gave rise to a loss deduction of $ 14,012. Respondent contends that all of the loss claimed by petitioners with respect to the Ashland property is disallowed by section 280A(e) since the condominium was made available to Mitchell at less than fair rental. [7] Petitioners argue that the rental was fair. The burden of proving a fair rental is on petitioners. Rule 142(a). We are not persuaded that $ 583.33 a month represented a fair rental for the Ashland property. Mitchell was the nephew of petitioners and, thus, to some degree, the natural object of their bounty. It would not be unnatural for them to charge him less than a fair rental. Petitioner Jerald Epstein (Jerald) testified that Mitchell was a tenant for all of 1988 and was the only tenant with a lease. Mitchell was also a tenant during 1987. Jerald testified that Mitchell was to pay a monthly rental of $ 583.33. He also testified that Mitchell paid rent on a timely basis during 1988. On their 1988 return, however, petitioner reported only $ 5,900 of rent from the Ashland property. Among other things, such amount is consistent with petitioners receiving only $ 491.66 a month from Mitchell. Petitioners have not argued that $ 491.66 a month is fair market rental for the Ashland property. Petitioner's daughter, Lauren, *52 lived at the Ashland property for at least 2 months during 1988, and may have lived there for a longer period. [8] Petitioners paid the phone bill for the first 3 months of 1988. We think that that is an indication of Lauren's presence in the condominium for such period. Indeed, we assume that petitioners paid the phone bill because the phone was in either their name (for Lauren's use) or Lauren's and remained so for the full period that Lauren resided there (from 1985 until some time in 1988). We are suspicious that Mitchell was a tenant with rights to only limited possession of the Ashland property and that, for that reason, Mitchell's monthly rent (whatever it is he paid) was not a fair market rent for possession of the whole property (as petitioners would have us believe). The foregoing analysis *53 involves conjectures. Together with the reasons set forth in the next paragraph, however, we believe that we have sufficient reason to conclude that petitioners have not carried their burden of proving that Mitchell paid a fair rental. The only evidence in the record to support petitioners' contention that the rent was indeed set at a fair value is Jerald's testimony. Indeed, that testimony is only to the effect that, to establish a fair rental, Jerald: "just looked in the newspaper and I talked to a couple of people who were handling real estate in that area and I asked them, [to] just try to get a feel for what other apartments in the area were going for." In and of itself, we do not find that testimony persuasive. Of course, Jerald might, nevertheless, have set a fair rental. Although corroborative data undoubtedly could have been obtained from a variety of sources, petitioners come forward with no evidence whatsoever to establish a fair rental for the condominium in 1988. We have long adhered to the rule that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that, if produced, such *54 evidence would be unfavorable. Recklitis v. Commissioner, 91 T.C. 874, 890 (1988); Davis v. Commissioner, 88 T.C. 122, 143 (1987), affd. 866 F.2d 852 (6th Cir. 1989); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We are unpersuaded that the condominium was provided to Mitchell at a fair rental and have so found. Accordingly, pursuant to the terms of sections 280A(d)(2)(C) and 280A(e), petitioners are entitled to only those deductions (such as real estate taxes) deductible without regard to whether the property was rented. See sec. 280A(e) (2). [9] Respondent, however, has conceded that petitioners are entitled to deduct $ 5,900 with regard to the Ashland property. Therefore, we hold that petitioners are entitled to deduct the greater of the amount to which they are entitled by section 280A(e)(2) or $ 5,900. *55 b. The Ludlow Property
In 1988, petitioners also owned a four bedroom house in Ludlow, Vermont (the Ludlow property). Although they rented out the Ludlow property for the first 2 months of 1988, the property went unrented for the remainder of the year. Petitioners challenge respondent's disallowance under section 280A of losses claimed with respect to the Ludlow property, alleging that the Ludlow property was never used for any personal purposes in 1988 and that deductibility of their loss is, thus, unrestricted by section 280A(e) and (c)(5). Petitioners bear the burden of proof as to the question of personal use. Rule 142(a). Petitioners admit that they traveled to the vacation house on approximately 12 different weekends in 1988. They insist, however, that such trips were made solely to clean the vacation house and to advertise the property to potential renters. In his testimony, petitioner Jerald explained, in part, the frequency of those trips by saying: "Well, the place was constantly getting dusty." Simply put, we do not believe Jerald that the primary purpose of those trips was to clean or advertise the property. The nature of the property is clear -- it was *56 a vacation home. It was close to facilities for the seasonal activities of skiing and tennis. Petitioners participated in both sports. Whatever other reasons petitioners may have had for spending $ 183,000 to purchase the Ludlow property, we simply do not believe that those reasons excluded using it as a vacation home. Moreover, we believe that they did so in 1988. In August 1988, Caren made a week-long trip to the Ludlow property with several women from her tennis club. A significant part of their time during the trip was devoted to attending a national tennis tournament held annually at nearby Stratton Mountain. Petitioners attempt to explain away that excursion as being actuated purely by business motives. As with Jerald's testimony, we disbelieve Caren. We do not believe that her trip was motivated purely (or even significantly) by business motives. Petitioners have not convinced us that the trips described should be treated as anything but principally for personal purposes. If petitioners wish to deduct their expenses under section 280A(c)(3), they cannot use their vacation house whenever they please, and then, when challenged, reply, simply, that their use of the *57 house was solely in furtherance of their rental activities. Some collateral evidence would have been helpful to corroborate petitioners' less than convincing, self-serving testimony. Such evidence is completely lacking in the instant case. Telephone records placed into evidence by respondent indicate that phone calls were made from the Ludlow property on 22 different weekends from March 1 through November 23, 1988. [10] Such records also show that telephone calls were made from the vacation house on over 100 different days during that period. The plain inference to be drawn from such telephone activity is that petitioners were present at their vacation house for more time than they admit. Not surprisingly, at trial, Jerald professed a lack of knowledge regarding the problematic telephone activity. Petitioners' only explanation of the calls is that some friends as well as some local business persons, such as an alarm company and an oil *58 company, possessed keys to the house. They opine that such persons might have made unauthorized telephone calls or might have used the phone to notify the Epsteins or other contact persons on account of unforeseen occurrences. We find significant the circumstance that petitioners received and paid the phone bills generated at the vacation house during 1988 without remarking the telephone activity regarding which they now profess such surprise. Petitioners' explanation, in our view, is wholly unsatisfactory to account for the suggestive telephone activity, particularly on the weekends during which the vacation house allegedly was unoccupied. We are not persuaded by petitioners that the vacation house was used solely for business purposes in 1988. Moreover, we are convinced that the house was put to personal use for 100 days during that year, and we have so found. Thus, contrary to petitioners' protestations, the vacation house meets the definition of a residence set forth in section 280A(d)(1) for the year in issue. Accordingly, we uphold respondent's position with respect to the Ludlow property. [11] Nevertheless, although we sustain respondent on this issue, her determination *59 must be adjusted downward to take account of increased deductions of $ 11,592.89. [12]
*60 III. Friedmann Financial Company #2
Respondent also disallowed losses of $ 11,878 claimed by petitioners with respect to their dealings with an entity known as Friedmann Financial Company #2 (Friedmann). Petitioners contend that during 1988 Friedmann was a partnership within the meaning of section 6231(a)(1) and that, therefore, the statute of limitations under section 6229, operating at the partnership level, bars respondent from making any adjustment with respect to the claimed losses. The bar of the statute of limitations is an affirmative defense, and the party raising it must carry the burden of proof with respect thereto. Rules 39, 142(a). Section 6229 contains special provisions establishing a separate statute of limitations for adjustment of certain items arising from entities that are partnerships within the meaning of section 6231(a)(1). On brief, petitioners assert that Friedmann was a partnership within the meaning of section 6231(a)(1) and that it timely filed a return for its 1988 taxable year. [13] Nevertheless, petitioners present us with no evidence beyond their simple assertions of those facts. We are provided with no details as to the organization *61 and structure of Friedmann or any corroboration that a return was, indeed, filed. Petitioners have failed to carry their burden of proof that Friedmann is a partnership, that Friedmann filed a return for 1988, or that Friedmann is a partnership within the meaning of section 6231(a)(1). Accordingly, petitioners have failed to meet their burden of proof that the adjustment made with respect to Friedmann is barred by the statute of limitations on assessments. Respondent's adjustment in that respect is upheld. IV. Additions to Tax
a. Section 6651(a)(1)
In relevant part, section 6651(a)(1) provides that, in the case of a failure to file an income tax return by the due date, there shall be imposed an addition to tax for such failure of 5 percent of the amount of tax, reduced by timely payments *62 and credits under section 6651(b)(1), for each month or portion thereof during which the failure continues, not exceeding 25 percent in the aggregate unless such failure is due to reasonable cause and not due to willful neglect. The parties agree that a 10-percent addition to tax should be imposed under section 6651(a)(1) against petitioners for their 1988 taxable year. We also agree. b. Section 6653(a)(1)
Respondent determined a section 6653(a)(1) addition to tax for negligence against petitioners for their 1988 taxable year. For that year, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of the amount required to be shown on a taxpayer's return if any part of that underpayment is due to negligence or disregard of rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have the burden of proof. Rule 142(a). As we explained in Gruse v. Commissioner, T.C. Memo. 1990-187: "When this Court has found that *63 a taxpayer's activity under section 183 was not engaged in for profit, it has also approved respondent's determination, in appropriate cases, that additions to tax for negligence should be imposed." One basis for such a holding is the failure of a taxpayer to maintain adequate records with respect to the challenged activity. See Faulkner v. Commissioner, T.C. Memo. 1985-536 (inadequate records maintained with respect to both a horse breeding operation and a fireplace business); and Sealy v. Commissioner, T.C. Memo. 1980-7 (lack of account books or ledgers in horse farming operation). Here, we have found that petitioners failed to keep separate and adequate books and records with respect to their Schedule C activity. Moreover, petitioners' attempts to dress up personal expenditures (i.e., Caren's health club memberships and lunches with her mother) as business expenses, represent, at best, a lack of due care on the part of petitioners. Accordingly, we sustain respondent's addition to tax for negligence with respect to petitioners' 1988 taxable year. c. Section 6661
Respondent also determined that petitioners are *64 subject to a section 6661 addition to tax for substantial understatement of liability for their 1988 taxable year. Section 6661(a), for the year in issue, provides that, "If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement." Under section 6661(b)(1)(A), there is a substantial understatement where the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Respondent's deficiency determination, which we have substantially upheld, exceeds 10 percent of petitioner's corrected liability, and, unless that liability can be reduced by section 6661(b)(2)(B), petitioners will be subject to the section 6661 addition to tax. Section 6661(b)(2)(B) makes provision for the reduction of an understatement by that portion of the understatement which is attributable to: (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed *65 in the return or in a statement attached to the return.
Petitioners do not contend that adequate disclosure was made within the meaning of section 6661(b)(2)(B)(ii). No disclosure statements were attached to petitioners' return and the information included in the return was insufficient to disclose the facts on which the deductions turned. Crim v. Commissioner, T.C. Memo. 1989-249, affd. by unpublished opinion 899 F.2d 1221 (6th Cir. 1990). Where substantial authority is concerned, petitioners have not come forward with any valid authority in support of their claimed deductions. Petitioners do contend that they relied upon the advice of their accountant. Such advice, however, does not constitute substantial authority within the meaning of section 6661(b)(2)(B)(i). Sec. 1.6661-3(b)(2), Income Tax Regs. A taxpayer's belief that authority regarding the treatment of an item constitutes substantial authority is not taken into account in determining whether substantial authority in fact exists. Schirmer v. Commissioner, 89 T.C. 277, 284 (1987). Finally, we note that petitioners never requested *66 from respondent a waiver of the section 6661 addition to tax as allowed by section 6661(c). Brown v. Commissioner, T. C. Memo. 1992-15. Moreover, petitioners, in our view, put forth no evidence of reasonable cause and good faith with respect to their substantial understatement of liability. Accordingly, we sustain respondent's section 6661 addition to tax against petitioners for their 1988 taxable year. Decision will be entered under Rule 155. Footnotes
1. Although respondent did not audit the tax return for the year in issue in the sense petitioners have in mind, it is apparent from the notice of deficiency received by petitioners that respondent did examine their return for 1988 and determine a deficiency based thereon. This case does not raise any issue of jurisdiction based on a respondent's failure to make a determination of deficiency within the meaning of Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 87 T.C. 855↩ (1983).
2. The parties also appear to have agreed to a variety of issues, which we do not address in our opinion.↩
3. On brief, respondent sets forth various alternative arguments including: (1) That petitioners failed to substantiate meals, entertainment, automobile, and home office expenses, (2) that Caren's home office was not her principal place of business, and (3) that other claimed business expenditures were not ordinary and necessary within the meaning of sec. 162. Petitioners contest those allegations. Since our holding for respondent with respect to sec. 183↩ disposes of all issues concerning Caren's Sales, we do not address those alternative arguments.
4. We have found that petitioners paid $ 20,824 of mortgage interest (qualified residence interest, see sec. 163(h)(3)) with respect to their Framingham home. They claimed $ 15,224 on Schedule A of their 1988 return. The remainder, $ 5,600, is allocable to petitioners' Schedule C activity, and is therefore allowable under sec. 183(b)(1). That amount exceeds the gross income generated by Caren's Sales ($ 3,900). Accordingly, all other deductions claimed by petitioners with respect to their Schedule C activity are disallowed by sec. 183(b)(2). Since neither party has asked us to address the interaction of sec. 183 with sec. 280A, we will not do so. See sec. 280A(f)(3); Antonides v. Commissioner, 91 T.C. 686, 697↩ (1988).
5. Section 280A: (a) General Rule. -- Except as otherwise provided in this section, in the case of * * * an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (b) Exception For Interest, Taxes, Casualty Losses, Etc. -- Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity). * * * (3) Rental Use. -- Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)). * * * (5) Limitation On Deductions. -- * * * where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of -- (A) the gross income derived from such use for the taxable year, over (B) the sum of -- (i) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used, and (ii) the deductions allocable to the trade or business (or rental activity) in which such use occurs (but which are not allocable to such use) for such taxable year.
* * * (d) Use As Residence. -- (1) In General. -- * * * a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of -- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental. * * * a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes. (2) Personal Use Of Unit. -- For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used -- (A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267(c)(4)) of the taxpayer or such other person;
* * * (C) by an individual * * * unless for such day the dwelling unit is rented for a rental which, under the facts and circumstances, is fair rental.
* * * (e) Expenses Attributable to Rental. -- (1) In General. -- In any case where a taxpayer * * * uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible under this chapter with respect to expenses attributable to the rental of the unit (or portion thereof) for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit (or portion thereof) is rented at a fair rental bears to the total number of days during such year that the unit (or portion thereof) is used. (2) Exception For Deductions Otherwise Allowable. -- This subsection shall not apply with respect to deductions which would be allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was rented. * * * (3) Coordination With Section 183. -- If subsection (a) applies with respect to any dwelling unit (or portion thereof) for the taxable year -- (A) section 183 (relating to activities not engaged in for profit) shall not apply to such unit (or portion thereof) for such year, but (B) such year shall be taken into account as a taxable year for purposes of applying subsection (d) of section 183↩ (relating to 5-year presumption).
6. Noting the approximately $ 1,000 disparity between the $ 7,000 of annualized rent petitioners claimed was paid by Mitchell and the $ 5,900 reported as rent on petitioners' 1988 return, respondent, on brief, contends that petitioners underreported their income by approximately $ 1,000 in 1988. Nevertheless, such unreported income was neither determined by respondent in her notice of deficiency nor reflected in her pleadings. Rule 41(a). Moreover, we do not deem that the issue has been tried by either express or implied consent of the parties. See Rule 41(b)(1). Accordingly, we do not consider that item at issue and will not further discuss it.↩
7. Respondent has conceded the deductibility of petitioners' deductions in connection with the Ashland property in the amount of rental ($ 5,900) reported with regard to that property.↩
8. There is no evidence that convinces us that Lauren paid rent to reside at the Ashland property or that the Ashland property was her personal residence. Those facts, alone, subject petitioners to sec. 280A(c)(5)↩.
9. Here, petitioners are not entitled by sec. 280A(e)(2)↩ to deduct the mortgage interest claimed with respect to the Ashland property as qualified residence interest since, as discussed in n.10, we deem the Ludlow property, and not the Ashland property, to represent petitioners' second qualified residence within the meaning of sec. 163(h)(4)(A)(i)(II).
10. The telephone records in evidence extend only through November 23, 1988.↩
11. On brief, petitioners initially attempt to frame their argument in the context of sec. 183. Sec. 280A(f)(3), however, makes clear that where sec. 280A applies, as it does here, sec. 183↩ becomes inapplicable.
12. Since the mortgage interest paid with respect to the Ludlow property ($ 11,813) exceeds the amount of mortgage interest paid with respect to the Ashland property for 1988 ($ 9,927), we deem the Ludlow property to represent petitioners' second qualified residence within the meaning of sec. 163(h)(4)(A)(i)(II). In total, petitioners are entitled to deductions of $ 15,642.89: $ 13,866 of qualified residence interest and taxes and $ 1,776.89 of depreciation. Respondent, however, only has allowed petitioners a deduction in the amount of gross income generated by the Ludlow property ($ 4,050). Thus, petitioners are entitled to an additional deduction of $ 11,592.89. That adjustment is based on the following analysis. Sec. 280A(c)(5) restricts deductions allocable to the Ludlow property to the amount of gross income generated by the property for the year ($ 4,050). The portion of qualified residence interest and taxes allocable to the rental activity is $ 2,273.11 (60 days of rental use/366 days = 16.393%. 16.3934% x $ 13,866 = $ 2.273.11) Bolton v. Commissioner, 77 T.C. 104, 111 (1981), affd. 694 F.2d 556 (9th Cir. 1982). After subtracting the portion of deductions allocable to qualified residence interest and taxes from gross income generated by the property ($ 4,050 - $ 2,273.11), there remains $ 1,776.89 of deductions allowed by sec. 280A(c)(5). Although the parties do not indicate with precision the amount of depreciation allowable with respect to the Ludlow property during the year in issue, the allocable portion of that amount clearly exceeds the remaining $ 1,776.89 ceiling imposed by sec. 280A(c)(5). Accordingly, that lingering $ 1,776.89 is attributable to depreciation. We note that the remaining amount of mortgage interest and taxes disallowed by sec. 280A(c)(5) is allowed by sec. 280A(b) since such amount is independently deductible elsewhere in the Code. In sum, petitioners are entitled to deductions as follows: (1) Qualified residence interest and taxes of $ 2,273.11 under sec. 280A(c)(5), (2) depreciation of $ 1,776.89 under sec. 280A(c)(5), and (3) remaining qualified residence interest and taxes of $ 11,592.89 under sec. 280A(b). (Total = $ 15,642.89) Respondent, however, has allowed petitioners a deduction only to the extent of the sec. 280A(c)(5)↩ limitation ($ 4,050). Accordingly, we adjust respondent's determination to allow petitioners a deduction for the remaining $ 11,592.89 ($ 15,642.89 - $ 4,050).
13. In their opening brief, petitioners claim "The partnership return was filed in 1988." In their reply brief, by contrast, they state "This partnership tax return was filed in 1989 and was filed again in March of 1990."↩