**M. S. and Geraldine C. LEE**

v.

**The UNITED STATES.**

**R. E. and Jane S. LEE**

v.

**The UNITED STATES.**

**Nos. 265–74, 266–74.**

United States Court of Claims.

Feb. 22, 1978.

Dee A. Replogle, Jr., Oklahoma City, Okl., attorney of record, for plaintiffs. Robert H. Gilliland, Jr., and McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., of counsel.

James L. Malone, III, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defend-ant. Theodore D. Peyser and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and NICHOLS and BENNETT, Judges.

## OPINION

### PER CURIAM:

These cases come before the court on the exceptions of the parties to the recommended decision of Senior Trial Judge Mastin G. White, filed February 10, 1977, pursuant to Rule 134(h), having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth *, it hereby affirms and adopts the decision as the basis for its judgment in this case. It is, therefore, concluded that plaintiffs are entitled to recover (together with interest as prescribed by statute) insofar as their claims are based upon interest that was paid on loans obtained from Western Security Life Insurance Company during the years 1966, 1967, 1968, and 1969, and judgment is entered for plaintiffs to that effect. The amount of plaintiffs' recovery in each case will be determined pursuant to Rule 131(c).

The court further concludes that plaintiffs are not entitled to recover insofar as their claims are based upon interest paid on loans obtained from Western Security Life Insurance Company during the years 1962, 1963, 1964, and 1965, and the respective petitions are dismissed as to such claims.

### OPINION OF TRIAL JUDGE

WHITE, Senior Trial Judge: R. E. Lee and Jane S. Lee, the plaintiffs in case No. 266–74, are husband and wife. M. S. Lee and Geraldine C. Lee, the plaintiffs in case No. 265–74, are also husband and wife. All the plaintiffs are residents of Oklahoma City, Oklahoma. (When the term "plaintiffs" is used hereafter in the opinion, it will refer to R. E. Lee and M. S. Lee unless

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed February 10, 1977, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

the context plainly indicates otherwise, as Jane S. Lee and Geraldine C. Lee are parties to the litigation only because they signed joint income tax returns with their respective husbands.)

The issue before the court in the two cases—which were consolidated for trial purposes, as they involve similar facts and identical questions of law—relates to the deductibility for income tax purposes of amounts alleged by the plaintiffs to have been interest payments made to Western Security Life Insurance Company ("Western") in 1966, 1967, 1968, and 1969 on loans secured by life insurance policies which Western had issued to the plaintiffs in 1962.

On July 1, 1962, the plaintiffs purchased a total of 63 so-called "Executive Special" life insurance policies from Western, an Oklahoma City company. These policies were whole life policies (as distinguished from term policies or endowment policies), and each was for the face amount of $50,000.

Plaintiff R. E. Lee purchased 30 of the insurance policies mentioned in the preceding paragraph. He was the owner, policyholder, and beneficiary of each of the 30 policies. Six of the policies were issued on the life of R. E. Lee himself, six policies were issued on the life of his wife, Jane S. Lee, and six policies were issued on the life of each of their three children, Robert E. Lee II, Linda Jane Lee, and Terry Lou Lee.

Plaintiff M. S. Lee purchased 33 of the 63 life insurance policies previously mentioned. He was the owner, policyholder, and beneficiary of each of these 33 policies. Six of the policies were issued on the life of M. S. Lee, three policies were issued on the life of his wife, Geraldine C. Lee, and six policies were issued on the life of each of their four children, Stanley W. Lee, Larry K. Lee, Richard C. Lee, and Claudia Lee.

As required by Oklahoma law, each of the 63 life insurance policies contained a provision granting the policyholder the right to obtain from Western at any time, on the sole security of the policy, a loan in an amount not exceeding the then-current cash surrender value of the policy, such loan to bear interest at the rate of 4 percent per annum. The loan provision of each policy further stated, in accordance with Oklahoma law, that the failure of the policyholder to repay the principal of, or to pay the interest on, any such loan or loans would not void the policy so long as the total amount due did not exceed the cash surrender value of the policy.

The plaintiffs took full advantage of the loan provisions of the several policies by utilizing every year the full amount of the then-current cash surrender value of each policy. The mechanics of such utilization, and the issue presented by the litigation, can be illustrated by taking the six life insurance policies on the life of Terry Lou Lee as an example, and outlining the relationship between R. E. Lee (the father of Terry Lou Lee and the owner of the Terry Lou Lee policies) and Western with respect to such policies.

It is necessary to note at the outset that during the 1962–65 period—which preceded the period that is actually involved in the present litigation—the relationship between R. E. Lee and Western with respect to the six Terry Lou Lee policies involved a situation which was similar to the situation that was before this court in *Ballagh v. United States*, 331 F.2d 874, 166 Ct.Cl. 191 (1964), *cert. denied*, 379 U.S. 887, 85 S.Ct. 157, 13 L.Ed.2d 92 (1964).

Each of the six $50,000 policies insuring the life of Terry Lou Lee called for an annual premium of $2,971 for the first 20 years, and $471 per year beginning in the 21st year of the policy and continuing indefinitely thereafter. In the first year, 1962, R. E. Lee paid to Western: (1) $17,826 to cover the first annual premiums due on the six policies for the 1-year period beginning July 1, 1962; (2) $66,261 representing the then-present value of the next 4 years' premiums on the six policies, discounted at 3 percent; and (3) $3,329.94 as "interest" on the amount of $83,248.62 "borrowed" by R. E. Lee from Western contemporaneously under the arrangement described in the next succeeding paragraph of this opinion. The prepaid premium fund of $66,261, when

supplemented by the interest to be earned thereon at the rate of 3 percent per annum, was sufficient to pay the next four annual premiums as they became due on the six Terry Lou Lee policies.

Contemporaneously with the payments from R. E. Lee to Western mentioned in the preceding paragraph, R. E. Lee "borrowed" $83,248.62 from Western on the six Terry Lou Lee policies at an annual interest rate of 4 percent. This "loan" consisted of the entire first-year cash surrender values of the six Terry Lou Lee policies ($15,000), plus the prepaid premium fund as supplemented by interest on such fund ($68,-248.62).

In each succeeding year after 1962, extending through 1965, R. E. Lee replenished the prepaid premium fund by making an advance payment of the premiums due 4 years later, discounted at 3 percent, or a total of $15,838.40. In accordance with the terms of the policies insuring the life of Terry Lou Lee, Western credited each year to the guaranteed cash value account of the six Terry Lou Lee policies the entire increase in the cash surrender values of the Terry Lou Lee policies. This amount was always greater than the $15,838.40 added to the prepaid premium fund; and R. E. Lee would use this amount, advanced to him as a "loan" by Western, together with other out-of-pocket amounts, to pay (1) the addition to the prepaid premium fund in full and (2) the annual 4 percent "interest" charged by Western on the increasing indebtedness to Western under the policies. As a result of these "loan" transactions, the six Terry Lou Lee policies owned by R. E. Lee never had any unused cash surrender value during the 1962–65 period.

■ *Ballagh v. United States, supra,* involved a loan transaction between a policyowner and an insurance company that featured the prepayment of premiums and then borrowing back the same amount from the insurance company, at interest. That is essentially what happened between R. E. Lee and Western with respect to the Terry Lou Lee policies during the 1962–65 period. In the *Ballagh* case, this court said (166 Ct.Cl. at 198, 331 F.2d at 878) that the loan transaction was a "sham" and that the purported interest payments that were made as part of the loan transaction should be disregarded for income tax purposes.[1]

In accordance with the *Ballagh* decision, it would be necessary to hold that the purported interest payments which R. E. Lee made to Western during the 1962–65 period on the loans from Western under the Terry Lou Lee policies were not deductible for income tax purposes, if the deductibility of such payments were before the court for decision.

The present litigation, however, does not involve any purported interest payments that were made during the 1962–65 period. We are concerned only with the interest payments made subsequently, during the 1966–69 period, when the relationship between R. E. Lee and Western with respect to the Terry Lou Lee policies was different from what it had previously been.

On July 1, 1966, the prepaid premium fund relative to the six Terry Lou Lee policies was terminated, and the amount of the outstanding indebtedness owed by R. E. Lee to Western was reduced by the balance in the prepaid premium fund on June 30, 1966. Thereafter, there was no prepayment of premiums, and only the premiums currently due each year were paid as they became due.

R. E. Lee did not repay any part of the principal of the loans obtained from Western during the 1962–65 period; and the loans were carried on the books of Western and of R. E. Lee as an indebtedness owed by R. E. Lee to Western and bearing interest at the rate of 4 percent per annum.

---

1. *Accord: Emmons v. Commissioner of Internal Revenue,* 31 T.C. 26 (1958), *aff'd,* 270 F.2d 294 (3rd Cir. 1959), *cert. denied,* 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223 (1960); *Goldman v. United States,* 273 F.Supp. 137 (W.D.Okla. 1967), *aff'd,* 403 F.2d 776 (10th Cir. 1968); *Golsen v. Commissioner of Internal Revenue,* 54 T.C. 742 (1970), *aff'd,* 445 F.2d 985 (10th Cir. 1971).

What happened between R. E. Lee and Western with respect to the Terry Lou Lee policies each year during the period involved in the litigation (1966–69) can be illustrated by taking 1967 as an example.

As of July 1, 1967, the six Terry Lou Lee policies had developed additional cash surrender values totaling $19,583, and annual premiums totaling $17,826 became due on the six policies. In accordance with the customary procedure that had been worked out between R. E. Lee and Western, the following transactions took place as of July 1, 1967: (1) Western made what was designated as a new loan to R. E. Lee in the amount of $19,583, representing the then-current cash surrender values of the six Terry Lou Lee policies, and credited such amount to the account of R. E. Lee on its books; (2) Western charged $17,826, representing the annual premiums due on the six Terry Lou Lee policies as of July 1, 1967, against the account of R. E. Lee; (3) R. E. Lee remitted to Western a check in the amount of $4,337.52, representing the interest due on all the loans made by Western to R. E. Lee and secured by the six Terry Lou Lee policies; and (4) Western sent a check to R. E. Lee in the amount of $1,767.

In his income tax return for 1967, R. E. Lee claimed an interest deduction in the amount of $4,337.52 on the basis of the check in that amount previously mentioned as having been remitted to Western. This deduction was disallowed by the Internal Revenue Service; and such disallowance formed part of the basis for a deficiency assessment which the IRS made against R. E. Lee, and which R. E. Lee paid, for the year 1967.

The statutory provision involved in this controversy is section 163(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 163(a)), which provides that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." The question to be resolved is whether, in substance as well as in form, the 1967 remittance in the amount of $4,337.52 from R. E. Lee to Western constituted an interest payment on indebtedness.

Essentially, the transactions of July 1, 1967, between R. E. Lee and Western with respect to the Terry Lou Lee policies were rather ordinary happenings of the sort that are very common in the life insurance business: *i. e.*, R. E. Lee borrowed from Western the full amount of the then-current cash surrender values of the six policies, used most of the proceeds of the loan to defray the then-due annual premiums on the six policies for the next 12 months, and took the remainder in cash to be used for other purposes; and R. E. Lee contemporaneously paid Western the amount of interest ($4,337.52) then due on all the loans which he had obtained through the years on the security of the Terry Lou Lee policies.

The $4,337.52 interest payment in 1967 related in part to the loans which R. E. Lee had obtained from Western on the Terry Lou Lee policies during the 1962–65 period, and in part to the loans obtained in 1966 and 1967. If the purported loan transactions during the 1962–65 period were shams (as the *Ballagh* decision of this court teaches) and interest payments made on such loans during the 1962–65 period would not have been deductible for income tax purposes, it seems to follow as a matter of simple logic that interest payments made after 1965 on the sham loans of 1962–65 could not be deducted for income tax purposes. This would make at least part of the $4,337.52 interest payment in 1967 nondeductible.

On the other hand, it is my opinion that the *Ballagh* decision does not require a rejection of the 1967 deduction claim insofar as it relates to the portion of the $4,337.52 interest payment which is allocable to the 1966 and 1967 loans on the Terry Lou Lee policies.

█ Although R. E. Lee was a wealthy man on paper, his estate was illiquid; and he had a serious cash-flow problem that made it impossible for him to pay the premiums on his insurance policies as they became due in 1966 and 1967 without borrowing the money from some source. In the absence of borrowing, he could not have maintained the extensive insurance cover-

age that he regarded as prudent and wise (and there is nothing in the record to indicate that his belief in the desirability of extensive coverage was unreasonable, under the circumstances). His credit was good with banks in Oklahoma City, and he could have borrowed from banks the amounts of money needed to pay the annual premiums on his Western policies (including the six Terry Lou Lee policies) as the premiums became due in 1966 and 1967. Interest payments on such loans from banks would, of course, have been deductible for income tax purposes under 26 U.S.C. § 163(a). However, R. E. Lee would have been required to pay much higher interest rates on loans from banks than the interest rate payable on loans that were readily available to R. E. Lee, in accordance with Oklahoma law, under the terms of the Western life insurance policies. Consequently, R. E. Lee borrowed from Western, rather than from banks, the money that he needed in order to pay the insurance premiums on the Western policies, including the six Terry Lou Lee policies, as the premiums became due in 1966 and 1967. Certainly, the mere source of a loan—whether from a bank or an insurance company—should not affect the deductibility for income tax purposes of interest paid on the loan.

It is my opinion, therefore, that the portion of the $4,337.52 interest payment in 1967 that covered the interest due on the 1966 and 1967 loans from Western under the Terry Lou Lee policies was deductible in accordance with 26 U.S.C. § 163(a).

What has been said with respect to R. E. Lee's interest payment of $4,337.52 in 1967 is also applicable to the other interest payments by the plaintiffs in 1966, 1967, 1968, and 1969 that are involved in the present litigation.

To summarize: the plaintiffs are entitled to recover with respect to interest payments made during 1966–69 on loans obtained from Western during the 1966–69 period, and are not entitled to recover insofar as interest payments on loans obtained during the 1962–65 period are concerned.

## CONCLUSION OF LAW

Upon the trial judge's foregoing opinion and the findings of fact, which are adopted by the court, the court concludes as a matter of law that the plaintiffs are entitled to recover (together with interest as prescribed by statute) insofar as their claims are based upon interest that was paid on loans obtained from Western Security Life Insurance Company during the years 1966, 1967, 1968, and 1969, and judgment is entered to that effect. The amount of the plaintiffs' recovery in each case will be determined in subsequent proceedings under Rule 131(c).

The court further concludes as a matter of law that the plaintiffs are not entitled to recover insofar as their claims are based upon interest paid on loans obtained from Western Security Life Insurance Company during the years 1962, 1963, 1964, and 1965, and the respective petitions are dismissed as to such claims.