NEIL LATTIN AND RHONDA SHULMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lattin v. Commissioner
Docket Nos. 7003-91, 26782-91
United States Tax Court
T.C. Memo 1995-233; 1995 Tax Ct. Memo LEXIS 235; 69 T.C.M. (CCH) 2734; May 30, 1995, Filed *235 An appropriate order will be issued denying petitioners motion to dismiss for lack of jurisdiction and decisions will be entered under Rule 155. Neil Lattin and Rhonda Shulman, pro sese. For respondent: Keith L. Gorman. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
6653(a)
6653(a)
Year
Deficiency
6651(a)(1)
(1)(A)
(1)(B)
6661
1987
$ 30,468.00
$ 6,879.00
$ 1,985.00
[1]
$ 7,617.00
1988
26,465.00
3,382.75
--   --
--   On November 26, 1993, petitioners filed a motion to dismiss for lack of jurisdiction. In their motion petitioners assert that this Court lacks jurisdiction to determine the deductibility of partnership losses disallowed by respondent in the notice of deficiency. Petitioners claim that section 6221 [1] requires that the treatment of partnership items be determined at the partnership level. A hearing on the motion was held on December 6, 1993. Respondent argued that the partnership did not *236 exist, and therefore section 6221 would not apply. This Court reserved ruling upon the motion until the filing of all briefs in order to allow the parties to fully develop their arguments. Accordingly, we tried the issues as if we had jurisdiction and allowed the parties to brief the issue. [2]
The issues for decision are: (1) Whether the Court has jurisdiction over proposed adjustments to petitioners' losses relating to an entity known as Friedman Financial Co. #2; and if so, whether petitioners are entitled to deduct the losses *237 relating to Friedman Financial Co. #2. We hold that we do have jurisdiction; and furthermore, petitioners are not entitled to deduct losses relating to Friedmann Financial Company #2. (2) Whether petitioners may deduct certain expenses claimed on petitioner-husband's Schedule C. We hold that they are deductible to the extent stated herein. (3) Whether petitioners are entitled to deduct certain expenses claimed on petitioner-wife's Schedule C. We hold that they are deductible to the extent stated herein. (4) Whether petitioners are entitled to deduct certain cash and noncash contributions for tax year 1988. We hold that they are not entitled to such deductions. (5) Whether petitioners are entitled to an additional interest deduction for tax year 1987. We hold that they are not entitled to such deduction. (6) Whether petitioners' sale leaseback transaction with petitioner-wife's parents was a sham; and whether the expenses relating to the property are deductible. We hold that the transaction was a sham. Petitioners are entitled to deductions to the extent stated herein. (7) Whether petitioners are liable for additions to tax pursuant to section 6653(a)(1)(A) and (B) for *238 tax year 1987. We hold that they are liable. (8) Whether petitioners are liable for an addition to tax pursuant to section 6661 for tax year 1987. We hold that they are liable for substantial understatement of income to the extent stated herein. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, two supplemental stipulations of facts, and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Wilmington, Delaware. Petitioners are married and filed joint Federal income tax returns for all years in issue. Petitioner husband refers to Neil Lattin; petitioner wife refers to Rhonda Shulman. During the years in issue, petitioner husband was employed by the Family Practice Associates as a physician. Petitioner wife was employed by the Easter Seals Society as an administrator. Friedmann Financial Company #2
Friedman Financial Company #2 (FFC #2) is identified as a partnership on petitioners' 1987 and 1988 tax returns. Petitioners offered copies of returns for FFC #2 for tax years 1987 and 1988. Those returns indicated that there were more than 10 partners. *239 However, respondent offered two documents entitled Certification of Lack of Record, one for tax year 1987 and one for tax year 1988, from the Director of the Brookhaven Service Center indicating that partnership returns were not filed for FFC #2. Furthermore, petitioners admitted that they could not prove that the 1987 and 1988 partnership returns for FFC #2 were filed. Respondent filed a substitute tax return for FFC #2 for 1988. Petitioners did not offer a partnership agreement or books and records for FFC #2. Schedule C Business
To augment his salary from Family Practice Associates, petitioner husband established a part-time medical consulting business. Petitioner-husband's consulting was performed for peer review organizations. Petitioner reviewed medical records of various physicians in Delaware. On petitioner-husband's Schedule C for the years in issue he reported income and expenses relating to the peer review services. Petitioner wife reported income and expenses on Schedule C in which she indicated that her business or profession was real estate services. Petitioner wife had no experience in real estate and was not licensed as a real estate broker. Petitioner *240 wife never located any properties or closed any deals in connection with her activity. On her Schedule C for tax years 1987 and 1988, she reported gross receipts of $ 15,000 and $ 12,000, respectively. However, petitioner wife did not receive cash in 1987 or 1988. In a letter dated July 26, 1987, from Mr. Gary Friedmann [3] to petitioner, Mr. Friedmann stated that petitioner's compensation, $ 15,000 for 1987 and $ 12,000 for 1988, from Friedmann Management Corp. will be deducted from petitioner's debt payable to Equity Investors (EI). [4] Subsequently, it was determined that petitioner's mother would participate. In a letter dated August 1, 1987, from Mr. Friedmann to petitioner, he stated that petitioner could "share the benefits and burdens of the deal * * * with your mother, Victoria Shulman." The compensation was adjusted so that $ 15,000 payable for 1987 would be offset against Victoria Shulman's debt owed to EI and $ 12,000 payable for 1988 would be offset against Rhonda Shulman's debt owed to EI. The letter went on to state that "you (i.e., petitioner) will not be receiving any compensation for 1987." Victoria Shulman had never worked in the real estate field, nor was she *241 licensed to broker real estate. The record is devoid of any documents relating to the purported agreements or loans. [5]
Petitioner did not maintain any receipt or disbursement journals for her business for either of the years in issue. For tax years after 1988, petitioner wife no longer filed her tax return claiming to be engaged in a Schedule C business. New London Property
On petitioners' tax returns for the years in issue, they claimed losses attributable to the rental of property located in New London, Connecticut. The parents of petitioner wife owned the property from 1966-1986. On November *242 28, 1986, the parents executed a deed of the property to petitioners for the stated consideration of "$ 1.00 and other valuable consideration". On the same day, petitioners executed a mortgage on the property in favor of First New London Savings and Loan Association for $ 60,000. The $ 60,000 was paid to the parents at closing. Petitioners also signed a second mortgage to the parents for the stated amount of $ 141,000, with payments of interest, in the amount of $ 1,175, due on the first of each month. The principal was to be paid on or before December 1, 1996. Petitioners' payments to the parents for 1987 were often late; however, no late fees were paid. Petitioners made no payments to the parents after 1987. Petitioners did not deduct the interest payments made in 1987, nor did the parents include the interest in income. The parents reported the sale of the property on their 1986 Federal income tax return on Form 2119 Sale or Exchange of Principal Residence. However, only $ 60,000 was indicated as mortgage, note, or other financial instrument on which the parents would receive periodic payments of principal or interest from the sale. Petitioners claim that the parents *243 leased back the property for a monthly rental of $ 1,000. [6] The parents made payments of $ 11,000 to petitioners in tax year 1987. Petitioners reported rental income of $ 5,700 for tax year 1987. Petitioners claim that in December 1987, an oral modification was entered into, whereby it was determined that the monthly rent would be reduced to $ 500; and in lieu of making the rent payments, the parents were to make significant repairs to the property. Petitioners also contend that the oral modification provided that interest payments would not be made until the house was repaired. Petitioners reported rental income of $ 5,400 for tax year 1988. In the notices of deficiency, respondent determined deficiencies in petitioners' 1987 and 1988 Federal income *244 tax with respect to underreporting of income, lack of substantiation of losses and expenses, and self-employment taxes. Respondent determined additions to tax for negligence and substantial understatement of liability. Petitioners amended their petition to assert additional deductions. OPINION Issue 1. Jurisdiction Over Partnership Issues
Petitioners claim that FFC #2 was a partnership for the tax years in issue. Therefore, adjustments to partnership items were subject to the unified partnership audit procedures under section 6221 and could only be made at the partnership level. Respondent asserts that petitioners have not met their burden of proving that FFC #2 was a valid partnership as defined under section 6231(a). As a preliminary matter, we address the admissibility of the evidence presented. Prior to trial, Mr. Friedmann [7] filed a Motion to Quash Subpoena. In paragraph 1 of the subpoena, Mr. Friedmann was ordered to provide: 1. All Forms 1065, federal income tax returns, information returns, disbursement journals, partnership agreements, articles of incorporation, corporate minutes, accounting workpapers, forms 10-K, subscription agreements and any other *245 documents relating to * * * (a) Friedman Financial #1; (b) Friedmann Financial #2; (c) Friedmann Investor's #1; (d) Friedmann Investor's #2; (e) Friedmann Management Corporation; (f) Equity Investors; (g) Friedmann Finance Company.
*246 At the December 6, 1993, trial session, the Court heard arguments on the motion. The following discussion took place: MR. FRIEDMANN: Some of these enterprises they [i.e., petitioners] should have nothing to do with [sic]. These documents requested would be voluminous. THE COURT: Number 1, which ones don't have to do with the petitioners? MR. FRIEDMANN: Well, the petitioners were involved with Friedman Financial Number 2 and Friedman Investors Number 2. THE COURT: So that is (b) and (d)? MR. FRIEDMANN: That is correct. THE COURT: So you are saying the rest of it has nothing to do with petitioners? MR. FRIEDMANN: That's correct. THE COURT: And then Mr. Gorman [attorney for respondent] says (e), (f), and (g) are also involved in it. What do you say about that? After further discussion about the entities' involvement, the following was stated: THE COURT: So what you are saying is that (a) and (c), basically, are the two that had nothing to do with these investors; is that what you are representing? MR. FRIEDMANN: (b), (d), (e), (f). Yes, (a), (c).
The Court issued a pretrial Order regarding Mr. Friedmann's motion to quash. In relevant part, the subpoena was enforced *247 as to paragraph 1 limited to the following entities: (b) Friedmann Financial #2, (d) Friedmann Investor's #2, (e) Friedmann Management Corporation, (f) Equity Investors, and (g) Friedmann Finance Company. On brief, petitioners argue that FFC #1 is relevant to our analysis as to whether FFC #2 is a valid partnership. However, to give effect to our pretrial Order, we decline to consider such information because it was not provided to respondent, and, in the motion to quash, it was argued that such information was irrelevant. If we allow petitioner to make arguments based on documents relating to FFC #1, respondent would suffer hardship. Rule 104(c); see Exxon Corp. v. Commissioner, T.C. Memo. 1992-92. Respondent did not review any documents, nor was she allowed to present evidence, elicit direct testimony, or to cross-examine petitioners at trial as to FFC #1. Accordingly, we will consider petitioners' arguments without reference to FFC #1. The question of jurisdiction is a fundamental question that can be raised by either party, or the Court. Naftel v. Commissioner, 85 T.C. 527, 530 (1985); Estate of Young v. Commissioner, 81 T.C. 879, 880-881 (1983). *248 Moreover, we have jurisdiction to determine whether we have jurisdiction. Pyo v. Commissioner, 83 T.C. 626, 632 (1984); Kluger v. Commissioner, 83 T.C. 309, 314 (1984). The jurisdiction of this Court is governed by statute. Sec. 7442. This Court has subject matter jurisdiction to redetermine the tax liability of an individual or corporation if a valid notice of deficiency has been mailed by the Commissioner and the taxpayer to whom it is mailed timely files a petition for redetermination of the deficiency. Secs. 6212, 6213; Rules 13, 20; see Midland Mortg. Co. v. Commissioner, 73 T.C. 902, 907 (1980). Generally, the tax treatment of any partnership item is determined at the partnership level pursuant to the unified audit and litigation procedures set forth in sections 6221 through 6233. The partnership audit and litigation provisions were enacted in the Tax Equity and Fiscal Responsibility Act 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648. See also H. Conf. Rept. 97-760, at 599 (1982), 1982-2 C.B. 600, 662; Boyd v. Commissioner, 101 T.C. 365, 368-369 (1993). *249 Prior to the enactment of these provisions, any deficiency determination that involved items of income, loss, deduction, or credit of a partnership was made for each partner in conjunction with determining the proper tax treatment of all other items on the partner's individual Federal income tax return. Consolidated Cable, Ltd. v. Commissioner, T.C. Memo. 1990-657, affd. without published opinion 995 F.2d 222 (5th Cir. 1993). Each partner's tax liability was determined independently of the determination of any other partner's tax liability, even though an identical item might be involved. By enacting partnership audit and litigation procedures, Congress provided a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. Id.
The TEFRA partnership audit and litigation procedures are applicable to partnership taxable years beginning after September 3, 1982 and to any partnership taxable year ending after September 3, 1982, if the partnership, each partner, and each indirect partner requests the application, and the Secretary or his delegate consents to the application. *250 TEFRA sec. 407(a)(3); Sparks v. Commissioner, 87 T.C. 1279, 1284 (1986); Maxwell v. Commissioner, 87 T.C. 783, 789 (1986). In a partnership action for readjustment of partnership items, this Court has jurisdiction when the Commissioner has mailed a valid notice of final partnership administrative adjustments (hereinafter FPAA), and the tax matters partner or other eligible partner has timely filed a petition with the Court seeking a readjustment of partnership items. Secs. 6225, 6226; Rule 240(c). If the FPAA is not valid, we lack subject matter jurisdiction. Clovis I v. Commissioner, 88 T.C. 980 (1987); Maxwell v. Commissioner, supra at 788-789. Furthermore, if the entity files partnership returns for the years in issue, notwithstanding a determination that the entity was not a partnership for those years, the unified partnership procedures would apply. Sec. 6233; Consolidated Cable, Ltd. v. Commissioner, supra; sec. 301.6233-1T(c)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6795 *251 (March 5, 1987). In order for us to determine whether we have jurisdiction over the adjustments made by respondent, we must determine whether FFC #2 was a valid partnership for the years in issue. Alhouse v. Commissioner, T.C. Memo. 1991-652, affd. sub nom. Bergford v. Commissioner, 12 F.3d 166 (9th Cir. 1993). We have held that when a notice of deficiency is valid on its face and a timely petition has been filed from the notice, the burden is on petitioner to show any error in respondent's determination, including error, if any, in respondent's determination that the partnership commenced at a date which brings it within the TEFRA provisions. Consolidated Cable, Ltd. v. Commissioner, supra. Since the notice of deficiency is valid on its face, and a timely petition has been filed from the notice, the burden is on petitioner to show that a partnership was in existence, and, therefore, that the TEFRA provisions would apply. A partnership is broadly defined as "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial *252 operation, or venture is carried on." Sec. 7701(a)(2); sec. 1.761-1, Income Tax Regs. Generally, a partnership exists when persons "join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." Commissioner v. Tower, 327 U.S. 280, 286 (1946). The existence of the requisite purpose is a question of fact that turns on the parties' intent. Commissioner v. Culbertson, 337 U.S. 733, 742 (1949). Moreover, while the existence or nonexistence of a partnership under common law or State law may be relevant, Federal law controls classification for Federal tax purposes. Estate of Kahn v. Commissioner, 499 F.2d 1186 (2d Cir. 1974), affg. Estate of Grober v. Commissioner, T.C. Memo. 1972-240; Luna v. Commissioner, 42 T.C. 1067, 1077 (1964); sec. 1.761-1(a), Income Tax Regs.
There are several factors to be weighed in determining whether a partnership exists, none of which alone is determinative. Alhouse v. Commissioner, supra. *253 The test is whether: considering all the facts -- the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationships of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent -- the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. [Commissioner v. Culbertson, supra at 742.]
Petitioners have failed to produce any documentary proof that FFC #2 partnership was in existence during the years in issue. There is no partnership agreement nor have petitioners offered any evidence in the form of testimony from other purported partners that the partnership was in existence. Furthermore, petitioners have not produced books and records, and they have admitted that they cannot prove that Federal income tax returns were filed for FFC #2 for the years in issue. We find that petitioners have failed to carry their burden of proof that FFC #2 was a partnership within *254 the meaning of section 6231(a). [8] Accordingly, we hold that we have subject matter jurisdiction, and petitioner's motion to dismiss this case for lack of jurisdiction is denied. Since we have jurisdiction over the adjustments made by respondent relating to FFC #2, we must determine whether these adjustments *255 should be sustained. Petitioners' sole argument relating to the losses claimed from FFC #2 is that this Court lacks jurisdiction, and therefore they are entitled to the losses. Respondent asserts that petitioners have failed to substantiate the losses, and therefore, they are not entitled to the deductions claimed. Petitioners have not offered evidence to substantiate the deductions claimed relating to FFC #2. See Rule 142(a). Petitioners have not satisfied their burden of proof on this issue; accordingly, we sustain respondent's disallowance. Issue 2. Petitioner-Husband's Schedule C Expenses
Petitioners assert that petitioner husband incurred expenses attributable to his trade or business, and therefore such expenses are deductible. Respondent counters that petitioners have not substantiated their entitlement to the deductions. As a general rule, taxpayers bear the burden of proving respondent is incorrect in her determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Furthermore, deductions are strictly a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. *256 INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). A taxpayer can deduct all the ordinary and necessary expenses paid during the year in carrying on any trade or business. Sec. 162(a). However, taxpayers are required to keep such records as the Secretary deems sufficient to show whether or not such taxpayer is liable for tax. Sec. 6001; Menequozzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer is responsible for substantiating the amount of a deduction claimed, and if the taxpayer fails to do so, the Commissioner is justified in denying the deduction. Hradesky v. Commissioner, supra.The mere fact that a taxpayer cannot prove the amount of an otherwise deductible item is ordinarily not fatal because we may, if convinced by the evidence, estimate the amount of deductible expenses incurred *257 under the Cohan rule. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). The estimate must, however, have some reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). The evidence must show that at least the estimated amount was actually spent or incurred for the stated purpose. Williams v. United States, 245 F.2d 559 (5th Cir. 1957); Swedelson v. Commissioner, T.C. Memo. 1991-10. In making the estimate, the Court will closely scrutinize a taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, supra; Manning v. Commissioner, T.C. Memo. 1993-127. However, the benefit of the Cohan rule is unavailable to a taxpayer for expenses relating to travel or entertainment. See sec. 274(d). Travel Expenses
On his Schedule C for tax year 1987, petitioner husband claimed a deduction in the amount of $ 1,060 for travel expense. Respondent disallowed this deduction for lack of substantiation. Petitioners have not offered any evidence to prove *258 that respondent's determination is incorrect. Petitioners have advanced no argument on brief. Accordingly, we deem petitioners to have conceded this issue. Rule 149(b); Cerone v. Commissioner, 87 T.C. 1 (1986); Rockwell Intl. Corp. v. Commissioner, 77 T.C. 780, 837 (1981), affd. 694 F.2d 60 (3d Cir. 1982). Entertainment Expenses
On his Schedule C for tax year 1988, petitioner husband claimed a deduction in the amount of $ 2,110 for meals and entertainment expenses. Respondent disallowed the deduction for failure to comply with the substantiation requirements pursuant to section 274. Section 274 requires that the taxpayer substantiate expenses claimed for entertainment by adequate records to corroborate his or her own testimony as to (1) the amount of the expense, (2) the time and place of the entertainment, (3) the business purpose of the entertainment, and (4) the business relationship to the taxpayer of each person entertained. Petitioners have offered approximately 69 restaurant receipts in support of their deduction. Petitioners assert that "the receipts generally list the purpose *259 as medical", implying that the expense is related to petitioner-husband's business. Petitioners contend that strict compliance with section 274 is not necessary. In support of their position petitioners cite section 1.274-5(c)(2)(ii)(b) that: "the degree of substantiation necessary to establish business purpose will vary depending on the facts and circumstances of each case." Furthermore, petitioners assert that section 1.274-5(c)(2)(v) provides that substantial compliance is enough. Finally, petitioners assert that section 1.274-5(c)(3) provides that substantiation may be achieved through oral evidence or other corroborative evidence. As respondent points out, in each instance petitioners' argument and reliance on regulations is misleading. Sec. 1.274-5(c)(2)(ii)(b) provides: (b) Substantiation of business purposes. In order to constitute an adequate record of business purpose within the meaning of section 274(d) and this subparagraph, a written statement of business purpose generally is required. However, the degree of substantiation necessary to establish business purpose will vary depending upon the facts and circumstances of each case. Where the business purpose *260 of an expenditure is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required. For example, in the case of a salesman calling on customers on an established sales route, a written explanation of the business purpose of such travel ordinarily will not be required. Similarly, in the case of a business meal described in section 274(e)(1), if the business purpose of such meal is evident from the business relationship to the taxpayer of the persons entertained and other surrounding circumstances, a written explanation of such business purpose will not be required. (Emphasis added.)
Petitioners kept no diaries, logs, or other records. The only notation on the receipts is "medical". Petitioner-husband's Schedule C business was medical records review. Petitioners did not explain the facts and circumstances of the meal expenses. The business purpose is not evident from the surrounding facts and circumstances. Nor is the business purpose of the meal expenses evident from any business relationship of the taxpayer with the persons entertained. Similarly, petitioners misinterpret section 1.274-5(c)(2)(v), which provides: *261 Substantial compliance. If a taxpayer has not fully substantiated a particular element of an expenditure, but the taxpayer establishes to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of this subparagraph with respect to the expenditure, the taxpayer may be permitted to establish such element by evidence which the district director shall deem adequate. (Emphasis added.)
This section allows respondent to waive the strict substantiation requirements but only when the adequate records requirement is complied with to the satisfaction of the district director, and then only if the taxpayer establishes the elements with evidence the district director deems adequate. Petitioners have not provided the district director with sufficient records; this regulation is not relevant. Lastly, petitioner misquoted section 1.274-5(c)(3), which provides in relevant part: (3) Substantiation by other sufficient evidence. If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph *262 with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element -- (i) By his own statement, whether written or oral, containing specific information in detail as to such element; and
(ii) By other corroborative evidence sufficient to establish such element. (Emphasis added.)
Petitioners failed to provide specific information or detailed information as to the entertainment expense. Petitioners records are vague and incomplete. Accordingly, we sustain respondent's disallowance. Depreciation Deductions
On his Schedule C, petitioner husband claimed section 179 expense of $ 4,410 and $ 9,607 for tax years 1987 and 1988, respectively, and depreciation for 1987 of $ 2,553. Respondent disallowed the deductions in full. Section 162(a) allows a deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 179 allows a taxpayer to elect to expense the cost of certain property acquired for use in the active conduct of a trade or business in an amount not to exceed $ 10,000 in the year the property was placed in service. *263 Sec. 1.179-1(a) and (b), Income Tax Regs.
Section 167 provides, in part, for the allowance of a depreciation deduction with respect to "property used in a trade or business". Depreciation is designed to allow the taxpayer to secure a return for the cost of the property. United States v. Ludey, 274 U.S. 295, 300-301 (1927); Southeastern Bldg. Corp. v. Commissioner, 3 T.C. 381, 384 (1944), affd. 148 F.2d 879 (5th Cir. 1945). Under section 168, the depreciation allowed under section 167(a), with respect to property placed in service after 1986, is generally referred to as the "modified accelerated cost recovery system" (MACRS), which was introduced into law by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 201(a), 100 Stat. 2085, 2121-2137. Under section 1.167(g)-1, Income Tax Regs., when property that was previously used by the taxpayer for personal purposes is converted to use in a trade of business, the recovery (depreciation) allowance shall be determined as though the property was placed in service on the date the conversion to business use occurs. In such event, the unadjusted basis *264 of the converted property for recovery purposes is generally the lesser of the fair market value of the property or the adjusted basis of the property at the time of the conversion to business use. Petitioners did not explain how the assets were used by petitioner husband in his medical-records review business. They offered no documentary support for the cost of the assets. Nor did they show the dates the assets were placed in service. Many of the assets consist of furniture and fixtures contributed by petitioner to his business. The fair market values of the assets at the time of conversion from personal to business use were estimated by petitioner husband. Petitioners offered no supporting documents or other corroborating evidence. Accordingly, we find petitioner's estimated fair market value to be unpersuasive. At trial, petitioner-husband's testimony was vague and ambiguous. He could not explain which assets were being used in his business. Nor could he explain whether the deductions claimed for 1988 related to the assets from 1987 or new assets for 1988. Furthermore, there were assets depreciated relating to a more typical medical practice (i.e., examination table, *265 stethoscope, otoscope, etc.). Although petitioner was employed as a medical doctor and could conceivably use some or all of these types of assets in his job, the deductions at issue are for assets used in his medical-records review business. We find lack of evidence to show that these items were ordinary and necessary and directly related to carrying on his business. Accordingly, we sustain respondent's disallowance. Legal Fees
Petitioner husband claimed legal fees in connection with his Schedule C in 1987 and 1988 of $ 10,260 and $ 11,380, respectively. In support of the 1987 deduction petitioners claim that on January 12, 1987, they wired Mr. Friedmann $ 20,660 as a retainer. Petitioners assert that a bill from Mr. Friedmann, dated July 26, 1987, in the amount of $ 10,400 was for services relating to starting and investigating the business. Petitioners assert that this amount was not deducted but should have been amortized and deducted over a 5-year period beginning in 1987. Another bill dated December 27, 1987, in the amount of $ 10,260, is alleged by petitioners to be for services that were ordinary and necessary in petitioner-husband's existing business. For tax *266 year 1988, petitioners contend that a payment in the amount of $ 11,380 was made to Mr. Friedmann. Petitioners concede that only $ 7,000 of the $ 11,380 are legal fees relating to petitioner-husband's Schedule C. The remaining $ 4,380 relates to legal fees for petitioner wife. See infra p. 27. Respondent argues that the wire transfer was repayment of a loan between Mr. Friedmann and petitioner husband, and therefore is not deductible. Alternatively, respondent asserts that any amount that related to startup costs is not amortizable, because petitioners did not make an election to amortize the costs. Furthermore, petitioners have not proven that any other payment was made, and therefore the 1988 deduction should be disallowed. Notwithstanding the fact that petitioners were indebted to Mr. Friedmann, we shall respect the supporting documents and the testimony presented herein. Accordingly, petitioners are entitled to deduct the $ 10,260 in legal fees paid with respect to petitioner-husband's trade or business for tax year 1987. See sec. 162(a). However, they are not entitled to a deduction for the $ 10,400 in legal fees relating to startup costs, because petitioners did *267 not make a timely election on their tax return. Sec. 195(b); Krebs v. Commissioner, T.C. Memo. 1992-154. Nor are they entitled to a deduction for the $ 7,000 legal fees in tax year 1988, because they have failed to present any supporting documentation as to payment. Sec. 6001; Rule 142(a). Issue 3. Petitioner-Wife's Activity
Respondent disallowed certain Schedule C expenses of petitioner wife for 1987 and 1988 because of lack of substantiation. Petitioners assert that petitioner wife was engaged in a trade or business during the years in issue. Petitioners further contend that such expenses were deductible as ordinary and necessary business expenses. [9]
*268 As stated supra, taxpayers bear the burden of proving respondent is incorrect in her determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Entertainment Expenses
Petitioners' arguments relating to petitioner-wife's entertainment deduction is no different than the arguments relating to petitioner-husband's entertainment expenses. Petitioners have failed to offer any proof that would meet the reporting requirements of section 274. They have failed to meet their burden of proof. Sec. 274; Rule 142(a). Accordingly, we sustain respondent's disallowance. Depreciation Expenses
The extent of petitioners' evidence on this issue is testimony from petitioner wife that she set up an office in her home with office furnishings. The depreciation of office furnishings is allowed under sections 167 and 179. However, petitioners failed to provide any supporting documentation. They did not establish the amount of or nature of the business use of the home by petitioner wife, nor did they provide support for the purchase price of the assets or their fair value. Accordingly, we sustain respondent's disallowance. Consulting Expense
*269 Petitioner wife was to be paid $ 15,000 and $ 12,000 for services provided to Friedmann Management Corporation. The amounts were to be paid through Equity Investors by reducing the debt owed by petitioners. Petitioners claim that the compensation was to be paid in this form, because Mr. Friedmann controlled both entities. Subsequently, it was determined that the $ 15,000 compensation would reduce the debt owed by petitioner's mother (Victoria) to EI instead of the debt owed by petitioner. This was done to compensate Victoria for her consulting services. Petitioner wife reported the $ 15,000 and $ 12,000 as income on her Schedules C for 1987 and 1988, respectively. She deducted as consulting fees on her 1987 return $ 19,600. It appears that $ 15,000 of the amount relates to the fact that EI reduced Victoria's debt, not petitioner's debt. Petitioners further claim that she paid Victoria $ 1,600 in cash and $ 3,000 in the form of a check. Petitioners offered Form 1099 as documentary proof that such consulting expense was paid. Furthermore, petitioners offered two letters purportedly describing the arrangement. Respondent has disallowed the expense for lack of substantiation. *270 We agree with respondent that petitioners have failed to prove the payments to Victoria. Petitioner failed to offer the canceled check and failed to offer any support relating to the cash payment. The Form 1099 is not proof that the amount indicated was paid. Estate of DuBois v. Commissioner, T.C. Memo. 1994-210. Accordingly, we sustain respondent's disallowance as to the $ 1,600 and $ 3,000 amounts. As to the $ 15,000 amount in consulting fees, we believe that petitioners erroneously accounted for this item. Since the debt discharge by EI was for the benefit of Victoria for services she was to render, petitioners should not have reported any gross income. See sec. 61(a)(12). Accordingly, petitioners have no income or deduction relating to this item. Legal Fees
Our disposition of this issue was discussed supra p. 23 relating to petitioner-husband's trade or business. We accordingly hold that petitioner wife is not entitled to a deduction for $ 4,380 in legal fees in tax year 1988, because she has failed to present any supporting documentation as to payment. Sec. 6001; Rule 142(a). Issue 4. Deduction of Cash and Noncash Contributions
*271 Petitioners deducted $ 3,653 in cash contributions on their 1988 tax return. Petitioners' amended petition claims an additional $ 4,912 in cash contributions. [10] Respondent argues that such amounts are not deductible because petitioners have failed to prove that such payments were made to qualified charitable organizations. Section 170(a)(1) allows a deduction for contributions to charitable organizations defined in section 170(c). Section 170(c)(2)(B) allows a deduction for contributions to organizations that are organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. In order to sustain the burden of proving entitlement to a deduction for charitable contributions, the taxpayer must establish (1) that contributions were *272 made, (2) the amount of the contributions, and (3) that the contributions were made to qualified charitable organizations. Furthermore, the payment must be made without the receipt of a disqualifying quid pro quo. Howard v. Commissioner, 39 T.C. 833 (1963), (citing Commissioner v. Duberstein, 363 U.S. 278, 285 (1960)). Petitioners' proof consists of copies of checks made out to various payees. Apart from petitioners' own testimony, they did not offer any evidence to support their claim that the payees were qualified charitable organizations and that the payments were true donations. Petitioners did not present any receipts from the donee organizations, nor did they produce any testimony from any person affiliated with the donee organizations. The Court is unwilling to accept petitioners' unsupported testimony that the cash payments at issue were contributions to qualified organizations. It is well settled that this Court need not accept a party's self-serving testimony without substantiating documentation to meet that party's burden of proof. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), *273 affg. T.C. Memo. 1969-159. On this record, the Court sustains respondent on this issue. Petitioners claimed $ 1,500 noncash charitable contribution for tax year 1988. Respondent disallowed this deduction because of lack of substantiation. If a charitable contribution is made in property other than money, the amount of the contribution is, generally, the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. Further, any taxpayer who makes a charitable contribution of property other than money in a taxable year beginning after December 31, 1982, shall maintain for each contribution a receipt from the donee showing the name of the donee, the date and location of the contribution, and a description of the property in detail reasonably sufficient under the circumstances. Sec. 1.170A-13(b), Income Tax Regs. Moreover, fair market value of the property is one of the circumstances to be taken into account in determining the amount of detail to be included on the receipt. Id. A letter or other written communication from the donee acknowledging receipt of the contribution, showing the date of the contribution, *274 and containing the required description of the property contributed, is a sufficient receipt for this purpose. Id.
If the circumstances are such that it is impracticable to obtain a receipt, the taxpayer shall maintain reliable written records containing the required information, with respect to each item of donated property. Id. The reliability of the written records is to be determined on the basis of all of the facts and circumstances of a particular case. Sec. 1.170A-13(b)(2)(i), (a)(2)(i), Income Tax Regs. In all events, however, the burden shall be on the taxpayer to establish reliability. Id. Factors indicating that the written records are reliable include, but are not limited to: The contemporaneous nature of the writing evidencing the contribution, the regularity of the taxpayer's recordkeeping procedures, and written or other evidence from the donee charitable organization evidencing receipt of the donation. Id.
Moreover, if the deduction claimed for a charitable contribution of property other than money is in excess of $ 500 then the taxpayer shall, in addition to the aforementioned information, maintain written records indicating the manner of acquisition, *275 the approximate date of acquisition, and the cost or other basis, immediately preceding the date on which the contribution was made. Sec. 1.170A-13(b)(3)(i), Income Tax Regs.
If information regarding the acquisition date of the property or cost basis of the property is not available, and the taxpayer attaches a statement to his return setting forth reasonable cause for not being able to provide such information, the taxpayer shall not be disallowed a charitable contribution deduction on that account. Sec. 1.170A-13(b)(3)(ii), Income Tax Regs.
Petitioners have not presented a receipt, a letter, or other written communication from the donee acknowledging receipt of the contribution, showing the date of the contribution, and a detailed description of the property. Sec. 1.170A-13(b). Accordingly, petitioners must show the required information through written reliable records. Id. In Petitioners' Interrogatory Answers they indicate that the donee organization estimated the value of the noncash contributions. However, at trial petitioners testified that petitioner husband wrote the $ 1,500 amount on the receipt. Furthermore, petitioners testified that the amounts were determined *276 with Mr. Friedmann's assistance. The receipt does not list in detail the items contributed. Instead, petitioners offered a handwritten list of the items prepared by Mr. Friedmann. Petitioners testified that the list was based on a list prepared by petitioner wife; however, such list was never offered into evidence. Petitioners did not offer evidence as to the date of acquisition of the property nor evidence as to the original cost of the items. Moreover, petitioners offered no reasonable cause for not providing such information. Sec. 1.170A-13(b)(3)(i) and (ii). Petitioners seem to argue on brief that they are in substantial compliance with the reporting requirements in the regulations. We do not think petitioners have made a persuasive argument, nor do we think petitioners have complied with the regulations. Accordingly, we sustain respondent's disallowance. Issue 5. Deduction for Interest Expense
In petitioners' amendment to their petition they claim additional interest expense of $ 6,000. Petitioners argue that such amount is investment interest relating to their investment in EI. Respondent argues that petitioners are not entitled to such deduction because *277 of lack of substantiation. Investment interest is allowed as a deduction to the extent of net investment income. Sec. 163(d). Investment income is the sum of gross income from property held for investment and any net gain attributable to the disposition of property held for investment, but only to the extent such amounts are not derived from the conduct of a trade or business. Sec. 163(d)(4)(B). Furthermore, net investment income is the excess of investment income over investment expenses. Sec. 163(d)(4)(A). Petitioners argue that the interest payment was made pursuant to a loan in the amount of $ 55,525 from EI to petitioners. Respondent argues that petitioners have not established the existence of a legitimate debt or offered any supporting documentation. Furthermore, respondent argues that petitioners have not offered any evidence in support of investment income. We agree with respondent. Petitioners have not presented any documentation relating to the purported loan. Moreover, petitioners have not provided any additional checks relating to interest or principal. Petitioners argument is that one $ 6,000 interest payment was made on the $ 55,525 loan. We find petitioners *278 claim not credible and unpersuasive. Accordingly, we find for respondent. Issue 6. Deductions Relating to the New London Property
Petitioners deducted rental losses in tax years 1987 and 1988 relating to a sale-leaseback transaction. Respondent disallowed the losses claiming the transaction was (1) a sham, (2) petitioners did not meet the requirements of section 280A, and (3) petitioners failed to substantiate the rental expenses deducted. Taxpayers are generally free to structure their business transactions as they wish, even if motivated by tax reduction considerations. Gregory v. Helvering, 293 U.S. 465 (1935); Rice's Toyota World, Inc. v. Commissioner, 81 T.C. 184, 196 (1983), affd. on this issue 752 F.2d 89 (4th Cir. 1985). However, it is well settled that a transaction entered into solely for the purpose of tax reduction which is without economic, commercial, or legal purpose other than the expected tax benefits is an economic sham without effect for Federal income tax purposes. Frank Lyon Co. v. United States, 435 U.S. 561 (1978); Larsen v. Commissioner, 89 T.C. 1229 (1987), *279 affd. in part and revd. in part, and remanded sub nom. Casebeer v. Commissioner, 909 F.2d 1360 (9th Cir. 1990); Rice's Toyota World, Inc. v. Commissioner, supra at 196; Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1243 (1981). Nevertheless, the existence of tax benefits accruing to an investor does not necessarily deprive a transaction of economic substance. Frank Lyon Co. v. United States, supra; Estate of Thomas v. Commissioner, 84 T.C. 412, 432 (1985). Furthermore, in a case where portions of the transaction have economic substance, those portions may be given tax effect, whereas those portions which are without substance may be ignored. Lee v. United States, 215 Ct. Cl. 831, 571 F.2d 1180 (1978); see Rothschild v. United States, 186 Ct. Cl. 709, 407 F.2d 404 (1969); Goldstein v. Commissioner, 364 F.2d 734 (2d Cir. 1966), affg. 44 T.C. 284 (1965); Falsetti v. Commissioner, 85 T.C. 332, 354 (1985). *280 When transactions are found to lack economic substance, this Court has held that cash payments made pursuant to such transactions "merely represent the fee which petitioners paid to purchase tax benefits", and, consequently, they are not deductible. Patin v. Commissioner, 88 T.C. 1086, 1125 (1987), affd. sub nom. without published opinion Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Patin v. Commissioner, 865 F.2d 1264 (5th Cir. 1989), and affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). The sham transaction theory focuses on the entire transaction. Rice's Toyota World, Inc. v. Commissioner, supra; Grodt & McKay Realty, Inc. v. Commissioner, supra. To be classified as a sham the transaction must have "no business purpose" and "no economic substance." See Rice's Toyota World v. Commissioner, 752 F.2d at 91. In the *281 sale and leaseback context, the nonuser-owner who receives the benefits must specifically establish that the entry into the transaction was motivated by a business purpose to justify the form of the transaction and that the transaction was supported by economic substance. Rice's Toyota World, Inc. v. Commissioner, 81 T.C. at 201-203. A majority of the cases involving sale-leaseback transactions have been decided by a strictly factual analysis. Id. at 197 and the cases cited therein. Moreover, when a debt is incurred solely to create an income tax deduction, it does not support an interest deduction. Goldstein v. Commissioner, 364 F.2d 734, 740 (2d Cir. 1966), affg. 44 T.C. 284 (1965); see U.S. v. Wexler, 31 F.3d 117 (3d Cir. 1994). In the seminal case in this area, the Supreme Court held that interest on indebtedness was not deductible because the underlying transaction was a sham. Knetsch v. United States, 364 U.S. 361 (1960); see also Falsetti v. Commissioner, supra; *282 Karme v. Commissioner, 73 T.C. 1163 (1980), affd. 673 F.2d 1062 (9th Cir. 1982); Lovett v. Commissioner, 37 T.C. 317 (1961). Therefore, to be deductible the underlying debt must be genuine. Elliott v. Commissioner, 84 T.C. 227, 244-246 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986); Kovtun v. Commissioner, 54 T.C. 331, 338 (1970), affd. per curiam 448 F.2d 1268 (9th Cir. 1971). The first inquiry we undertake is whether the sale leaseback was a sham transaction. The record supports a finding of a sale between petitioners and the parents. There was a deed executed and a mortgage with First New London Savings and Loan Association. The proceeds from the mortgage were paid to the parents at closing. Furthermore, petitioners made payments and have continued to make payments on the mortgage with the bank. Therefore, to the extent that a sale took place and to the extent of the amount financed by petitioners with the bank, we hold that there was substance. *283 However, we do not so hold as to the rest of the transaction. Petitioners argue that the interest paid on the second mortgage with the parents is deductible. However, petitioners have not respected the genuineness of the debt. Although the term of the loan was for 10 years, petitioners did not make any payments after 1987. Moreover, the parents did not indicate on their tax return for the year of sale, i.e., Form 2119, the amount any indebtedness owed to them by petitioners. Petitioners claim that they entered into a lease with the parents. However, they did not present a written lease agreement or any other supporting documentation. Moreover, the alleged lease payments ceased after 1987. Petitioners' explanation was that in tax year 1988, petitioner wife and her mother orally agreed to modify the rent and mortgage payments. Petitioners contend that repairs were needed on the property; therefore, the rent payment was reduced from $ 1,000 a month to $ 500 a month. However, these payments were never made. We find petitioners not credible and their argument unpersuasive. The second mortgage and the lease were ignored by the parties. Furthermore, there is ample evidence that *284 petitioners entered into these transactions for tax benefits only. In 1986, the parents were experiencing cash flow problems, while petitioners' income was increasing. The record also indicates that Mr. Friedmann was substantially involved with arranging the affairs of petitioners and petitioner-wife's parents to reduce their taxes. To this end, petitioners and the parents entered into the purported sale leaseback transaction. Accordingly, we hold that the second mortgage and lease with the parents was not motivated by a business purpose, was devoid of economic substance, and should be disregarded for Federal income tax purposes. Therefore, we hold that petitioners may not deduct any expenses relating to the rental activity. Since we have held that the transaction was a sham, we need not discuss respondent's alternative arguments. Issue 7. Additions to Tax -- Negligence
In her notice of deficiency, respondent determined that petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B) for tax year 1987. For tax year 1987, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, *285 there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Petitioners bear the burden of proof regarding the additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). In regard to the income and deduction issues, petitioners have not presented any objective facts or arguments to show that they were not negligent in failing to report income and in taking those deductions in the year in issue. On this record, we sustain respondent's determination that petitioners are liable for the additions *286 to tax under section 6653(a)(1)(A) and (B) for 1987. Issue 8. Additions to Tax -- Substantial Understatement
The remaining issue is whether petitioners are liable for the addition to tax pursuant to section 6661 for tax year 1987. Section 6661 provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayers bear the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a). A substantial understatement of income tax exists in a year if the tax understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The amount of the understatement on which the addition to tax is *287 based will be reduced by that portion of the understatement which is attributable either to (1) a position adopted by the taxpayer for which substantial authority exists, or (2) any item with respect to which the taxpayer has made adequate disclosure of the relevant facts in the tax return or any statement attached thereto. Sec. 6661(b)(2)(B). Neither exception is present here. If the recomputed deficiency under Rule 155 satisfies the statutory percentage or amount, petitioners will be liable for that addition to tax. To reflect the foregoing, and to take into effect concessions made by both parties, An appropriate order will be issued denying petitioners' motion to dismiss for lack of jurisdiction and decisions will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on the income tax deficiency.↩
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. In the notice of deficiency, respondent disallowed losses relating to Friedman Financial Company #2 and Friedman Investors Company #2. At trial, petitioners conceded the losses with respect to Friedman Investors Company #2 and conceded the Court had jurisdiction over those losses.↩
3. Mr. Friedmann prepared petitioners' Federal income tax returns for the years in issue. Mr. Friedmann is a relative of petitioner wife.↩
4. Friedmann Management Corp. and Equity Investors are entities controlled by Mr. Friedmann.↩
5. On brief, petitioners state that certain documents were presented to respondent; however, the purported documents were not stipulated to or offered into evidence at trial.↩
6. A lease agreement is not in evidence. Petitioners claim that a copy of the lease was given to respondent; however, respondent would not stipulate to the copy because it was not an original, and respondent could not verify when the lease was drafted and signed.↩
7. Mr. Friedmann initially appeared in this case as counsel for petitioners. On Aug. 24, 1992, respondent filed a Motion for Order to Show Cause Why Gary Friedmann, Esq. Should Not Be Required to Withdraw as Counsel for Petitioners pursuant to Rule 24(f). The grounds for such motion were that Mr. Friedmann was the alleged organizer, promoter, financial backer, investor, and operator of certain alleged partnerships involved in these cases and that evidence concerning the validity of the alleged partnerships will have to be provided by testimony from Mr. Friedmann, who will therefore be a witness in these cases. Respondent's motion was granted; accordingly, Mr. Friedmann was ordered to show cause at the trial session of the Court on Sept. 21, 1992. At the trial session, Mr. Friedmann appeared and orally moved the Court for leave to withdraw as counsel of record for petitioners in these cases; the motion was granted. On Apr. 9, 1993, Mr. Friedmann again filed an Entry of Appearance for petitioners in these cases. A hearing was held on Apr. 19, 1993, wherein respondent's motion was to be heard. However, in the interest of settlement representations made by the parties, respondent's motion was withheld. A subsequent hearing was held on June 18, 1993, and as a result we issued an order that Gary Friedmann is withdrawn as counsel for petitioners. See Duffey v. Commissioner, 91 T.C. 81↩ (1988).
8. It should be noted, we have had the occasion to consider the same issue for different taxpayers, and we similarly found that the taxpayers in that case failed to meet their burden of proof that FFC #2 was a partnership. See Epstein v. Commissioner, T.C. Memo. 1994-34. Petitioners assert that the case at bar is distinguishable from Epstein, in that "petitioners (in that case) did not attempt to present the partnership books and records to the Court". Rather, "[they] merely asserted that FFC was a valid partnership." However, we find no evidence in the record to distinguish this case from Epstein↩. In fact, petitioners have merely asserted that FFC #2 was a valid partnership.
9. In respondent's notice of deficiency, she did not argue that petitioner was not engaged in a trade or business; the disallowance of certain Schedule C expenses was based on lack of substantiation. Nevertheless, petitioner and respondent argue on brief whether petitioner wife was engaged in a trade or business. We need not consider this argument, because of our holding on the substantiation issue.↩
10. On brief, petitioners claim entitlement to an additional $ 4,737 in cash contributions. We will assume petitioners have conceded the $ 175 additional amount (i.e., $ 4,912-$ 4,737).↩